UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL A. RANKIN,

                     Plaintiff

**COMPLAINT**

Civ. No.:

vs.

**JURY TRIAL DEMANDED**

CITY OF NIAGARA FALLS,
DEPARTMENT OF PUBLIC WORKS,
JOHN CASO, Department Head,
in his Official and Individual Capacity,

                     Defendants.

### PRELIMINARY INTRODUCTION

1.      This is an action brought by the Plaintiff PAUL A. RANKIN ("Plaintiff") for discrimination based on race (African American), and the retaliatory discharge of the Plaintiff after he engaged in protected activity under the Civil Rights Act of 1991, 42 U.S.C. §1981, based on race (African American) and the New York Human Rights Law, §290, *et seq.*.   Plaintiff seeks declaratory relief, compensatory, and punitive damages against the City of Niagara Falls and Department Head John Caso, in an amount to be determined at the time of trial.

### JURISDICTION AND VENUE

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C §§1331and 1343, 42 U.S.C. § 2000 (e), 42 U.S.C. §1981, 29 U.S.C. § 1331, 29 U.S.C. §§206 and 216; the Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to adjudicate Plaintiff's claims under state law.  Venue is proper pursuant to 28 U.S.C. §1391.

**PARTIES**

3.        Plaintiff is an African American individual male, who was at all times

          relevant herein a resident of the County of Niagara, State of New York.

4.        Upon information and belief, the defendant THE CITY OF NIAGARA

          FALLS, DEPARTMENT OF PUBLIC WORKS, ("the City")  is a municipal

          corporation, organized and existing under the laws of the State of New

          York.

5.        For all relevant times herein, JOHN CASO ("DH Caso") was Plaintiff's

          Department Head.

**FACTS**

**A.    The City's Policies**

6.        On June 11th, 2007, the City Council adopted a Discrimination and

          Harassment Policy which applies to all City officers and employees, and

          prohibits unlawful discrimination or harassment of any form in the

          workplace.

7.        On August 3rd, 2007, the City distributed this policy to its employees,

          including department heads and supervisory personnel who were charged

          for ensuring a work environment free from unlawful discrimination or

          harassment.

## B.    Plaintiff's Work History

8.    Plaintiff worked midnight shift for the City since 2004.

9.    Plaintiff's last position was Motor Equipment Operator (MEO3).

10.    The Plaintiff suffered a work related neck injury on September 13, 2007.

## C.    Posting of Plaintiff's Job While Plaintiff is Out on Leave

11.    While Plaintiff was out on leave, the City posted Plaintiff's Motor
       Equipment Operator 3 (ME03) job on July 2, 2008.

12.    The City replaced the Plaintiff and filled the position with a Caucasian
       employee, Boccanera.

13.    Boccanera's prior position was Motor Equipment Operator 2 (MEO2).

14.    Thereafter, David L. Kinney, Director Street Cleaning Division Public
       Works Dept., served Plaintiff a letter with a due date requesting him to
       return his uniforms, inferring that he was terminated from his position
       with the City.

## D.    The Ultimatum in Response to Plaintiff's Request for Light Duty

15.    On or about July 17th, 2008, Plaintiff requested a light duty position due
       to his injury on the job.

16.    Other similarly situated Caucasian employees have been granted light
       duty and transferred to other positions because of on the job injuries.

17.    In response to Plaintiff's request, DH Caso along with Roy Harvey, Crew
       Leader & USWA local 9434 02 President, ("Harvey") gave Plaintiff an
       ultimatum on July 17, 2008: *go see his doctor and change his medical
       restrictions,  or go back out on worker's compensation by July 23rd,
       2008.*

18.    On July 17th, 2008, the same day Supervisor Caso gave Plaintiff the
       ultimatum, a job was posted that was far below Plaintiff's job classification,
       Maintenance Worker 2 (MW2).

19.     Plaintiff made a bid for this position.

20.     The MW2 position was awarded to a white employee with less seniority
        than Plaintiff.

## E. July 23rd, 2008 Meeting

21.     During a July 23rd, 2008 meeting, Plaintiff requested Boccanera's
        MEO2 job.

22.     For some unknown reason, the City would not post Boccanera's
        position, or consider awarding Plaintiff Boccanera's MEO2 position
        even though Plaintiff had already filled that position previously and was
        able and qualified to perform this position.

23.     Thereafter, Boccanera' MEO2 job position was posted after Plaintiff
        was sent out on workers compensation against his will.

24.     Plaintiff was placed on workers compensation around July 23, 2008,
        even though he was capable of working, inter alia, the MEO2 position.

**F.    MEO2 Position Awarded 2 Times to Caucasian Workers**

25.        Stalls, a Caucasian employee less qualified than plaintiff,  was awarded

the MEO2 position while Plaintiff  was out on workers compensation.


26.        In August of 2008  Boccanera's MEO2 job position was posted without

Plaintiff being informed, and without the chance to bid on the same.


**G.    MW2 Position**


27.        Plaintiff called human resources in August of  2008 to inquire about the

awarding of the MW2 job vacancy, only to be informed that it was filled

by  Stalls.


28.        Plaintiff also found out there were  two (MW2 and MEO2 positions that

were awarded to Caucasian employees: the MW2 *was* awarded to

Stalls, and the MEO2 was awarded to Curcione, Jr., both Caucasian

employees.


29.        The weekend prior to  Stalls and  Curcione beginning these newly

awarded positions, Stalls died.

30.     Thereafter Curcione was awarded the MW2 vacancy, and once again,
        Boccanera's (MEO2) was posted for bidding, on August 15,2008.

31.     Plaintiff, again, was not informed about this re-posting of the MEO2 vacancy
        again, until August 22, 2008, when it was too late for him to bid.

## H.   August 25, 2008 Letter

32.     On Monday August 25, 2008, Plaintiff wrote a letter to Human Resources and
        the  DPW Director, stating his case and requesting to be considered for the
        (MEO2) job vacancy.

33.     A doctor's recommendation slip to return to full-duty starting August 28,2008
        was submitted to the City.

34.     The doctor's office immediately faxed this information to City Hall Public Risk
        Management and Workers Compensation in Albany.

35.     Plaintiff did not hear a word from his the City concerning when and where to
        show up for work.

36.     Finally, on Thursday, September 4, 2008, Plaintiff, received a phone
        message from the City's administration office, informing him that workers
        compensation needed "updated medical information."

37.     Plaintiff called Public Risk Management and a person there explained that,
        workers compensation had stopped paying Plaintiff as of August 28, 2008.

38.     Following this set of events, Plaintiff called the Human Resources Director,
        Joyce Serianni.

39.     Serianni, stated after Plaintiff inquired about the job vacancy and who
        was awarded this position,  "I spoke with your union rep. {Harvey} and he
        said Hugh Leftwich told him he gave you prior knowledge of the job
        posting."

40.     When I asked her for a copy of my letter of request and an answer, she
        stated, "I told you what was told me, but you can come get a copy of
        your letter, I will leave it with the front desk".

## I.    Disparate Treatment Amongst Similarly Situated Workers

41.        The City has a pattern of treating similarly situated African American
           employees in the same discriminatory manner.

42.        Bruce Palmer, an African American employee, went out on workers
           compensation for five days, and had the highest seniority for the job.
           His job was also posted and filled before he returned.

43.        The City has a pattern of treating non African American employees
           more favorably.

44.        Jerry Kovalevsky, called thousands of dollars of 900 phone numbers.
           R. Brundidge called several hundred dollars of 900 numbers.   Jerry
           Kovalevsky was reprimanded, a white employee.  Brundidge, a black
           employee, was fired. Following this incident Jerry was awarded a better
           higher paying job, relocated from the water treatment plant, to hide out
           in DPW midnights for his first two years, and serviced sweepers.

45.      Jerry Kovalevsky (MEO3) Motor Equipment Operator 3, injured an arm
         on job. He was promoted to officially a MEO3. Due to his injury, he
         was allowed to stay on midnights on light duty until he felt he wanted
         to sweep the streets. (Kovalevsky is a white employee. He was placed
         on light duty at the same time Paul Rankin was, and worked the same
         shift.

46.      Michael Jacobs, a white employee, was injured on the job. His position
         was (MEO3). The administration hid him in numerous jobs and
         locations, until he landed working at City Hall.

47.      Robert Brunno, another white employee, was injured on the job in
         forestry. He is now in administration.

## J.      Protected Activity

48.      Plaintiff complained in writing to Human Resources on August 25, 2008
         that Plaintiff was being denied a position and that Caucasian
         employees were able to bid on and apply for positions that Plaintiff was
         not able to bid on, but no remedial action was taken.

49.     In fact, days later a Caucasian employee admitted to hanging a sign
        over the water fountain that read "whites only."

50.     Plaintiff was terminated six days later on August 31, 2009.

51.     Plaintiff filed a Charge of Discrimination with the Equal Employment
        Opportunity Commission on September 15, 2008.

## FIRST CAUSE OF ACTION

### Racial Discrimination under 42 U.S.C. § 1981
### Against All Defendants and Each of Them

52.     Plaintiff repeats and re-alleges by reference each and every allegation
        contained in the above stated paragraphs, and incorporates the same
        as though fully set forth herein.

53.     Plaintiff claims he was subject to discrimination by DH Caso which was
        condoned by management and motivated by Plaintiff's race (African
        American) under 42 U.S.C. §1981 as set forth in the above stated
        paragraphs, and that defendants failed to obtain a light duty position
        for Plaintiff and instead offered those positions to similarly situated but
        less qualified Caucasian employees, compelling Plaintiff to remain on
        worker's compensation when he was capable of returning to work,  and
        then terminated Plaintiff on the basis of Plaintiff's race.

Page -11-

54.     DH Caso's conduct, ratified by the City, was not welcomed by Plaintiff.

55.     DH Caso's conduct, ratified by the City, was motivated by Plaintiff' s
        race.

56.     Defendant at all times relevant herein had actual and constructive
        knowledge of the conduct described in the above stated paragraphs,
        but failed to take any remedial action to put an end to the harassment
        Plaintiff suffered at the hands of DH Caso.

57.     The above described conduct of DH Caso created an intimidating,
        oppressive, discriminatory work environment on the basis of race which
        interfered with the Plaintiff's well being.

58.     As a result of the discriminatory actions perpetrated and maintained by
        defendants and each of them, and their failure to protect the Plaintiff
        from further discrimination, and to terminate Plaintiff on the basis of his
        race, Plaintiff suffers severe emotional distress.

59.     Defendants violated Plaintiff's civil rights under 42 U.S.C. § 1981 by
        failing to adequately supervise, control, discipline, and/or otherwise
        penalize the conduct, acts and failures to act of the Defendants as
        described above.

60.     Defendants failed to comply with their duty to take all reasonable and
        necessary steps to eliminate racial harassment from the workplace and
        to prevent it from occurring in the future.

61.     As a direct and proximate result of Defendants' willful, knowing and
        intentional discrimination against him, Plaintiff has suffered and will
        continue to suffer pain and suffering and extreme and severe mental
        anguish and emotional anguish and emotional distress; he has incurred
        and will continue to incur medical expenses for treatment by health
        care professionals, and for other incidental expenses, and he has
        suffered and will continue to suffer a loss of earnings and other
        employment benefits and job opportunities.  Plaintiff is thereby entitled
        to general and compensatory damages.

62.     As a further and proximate result of Defendants' violations, Plaintiff has
        been compelled to retain the services of counsel, and has thereby
        incurred and will continue to incur, legal fees and costs, the full nature
        and extent of which are presently unknown to the Plaintiff.  Plaintiff
        requests that attorney fees be awarded.

63.     Plaintiff is informed and believes, and based thereon alleges, that the
        outrageous conduct of Defendant described above was done with
        fraud, oppression and malice, with a conscious disregard for his rights,
        and with the intent, design, and purpose of injuring her. Plaintiff is
        further informed and believes that Defendant authorized, condoned
        and/or ratified the unlawful conduct alleged herein, specifically. By
        reason thereof, Plaintiff is entitled to punitive or exemplary damages
        from DH Caso in a sum to be adduced at trial.


64.     That Plaintiff's demand costs and attorneys' fees pursuant to 42 U.S.C.
        §1988.


## SECOND CAUSE OF ACTION

### Racial Discrimination under NYSHRL, Executive Law § 290, et seq.
### Against All Defendants and Each of Them


65.     Plaintiff repeats and re-alleges by reference each and every allegation
        contained in the above stated paragraphs, and incorporates the same
        as though fully set forth herein.

66.     Plaintiff claims he was subject to discrimination by DH Caso which was
        condoned by management and motivated by Plaintiff's race (African
        American) under 42 U.S.C. §1981 as set forth in the above stated
        paragraphs, and that defendants failed to obtain a light duty position
        for Plaintiff and instead offered those positions to similarly situated but
        less qualified Caucasian employees, compelling Plaintiff to remain on
        worker's compensation when he was capable of returning to work, and
        then terminated Plaintiff on the basis of Plaintiff's race.


67.     DH Caso's conduct, ratified by the City, was not welcomed by
        Plaintiff.

68.     DH Caso's conduct, ratified by the City, was motivated by Plaintiff's
        race.

69.     Defendant at all times relevant herein had actual and constructive
        knowledge of the conduct described in the above stated paragraphs,
        but failed to take any remedial action to put an end to the harassment
        Plaintiff suffered at the hands of DH Caso.

70.     The above described conduct of DH Caso created a discriminatory
        work environment which interfered with the Plaintiff's well being.

71.     As a result of the hostile and offensive environment perpetrated and
        maintained by defendants and each of them, and their failure to protect
        the Plaintiff from further harassment, Plaintiff suffers severe emotional
        distress.

72.     Defendants violated Plaintiff's civil rights under the NYSHRL, Executive
        Law § 290  by failing to adequately supervise, control, discipline,
        and/or otherwise penalize the conduct, acts and failures to act of the
        Defendants as described above.

73.     Defendants failed to comply with their duty to take all reasonable and
        necessary steps to eliminate racial discrimination from the workplace
        and to prevent it from occurring in the future.

74.     As a direct and proximate result of defendant's willful, knowing and
        intentional discrimination against him, Plaintiff has suffered and will
        continue to suffer pain and suffering and extreme and severe mental
        anguish and emotional anguish and emotional distress; he has incurred
        and will continue to incur medical expenses for treatment by health
        care professionals, and for other incidental expenses, and he has

suffered and will continue to suffer a loss of earnings and other
employment benefits and job opportunities. Plaintiff is thereby entitled
to general and compensatory damages.

75.     Plaintiff is informed and believes, and based thereon alleges, that the
        outrageous conduct of defendant described above was done with
        fraud, oppression and malice, with a conscious disregard for his rights,
        and with the intent, design, and purpose of injuring him. Plaintiff is
        further informed and believes that defendant authorized, condoned
        and/or ratified the unlawful conduct alleged herein, specifically.

## THIRD CAUSE OF ACTION

### Retaliation under 42 U.S.C. § 1981
### As and Against All Defendants and Each of Them

76.     Plaintiff repeats and re-alleges by reference each and every allegation
        contained in the above stated paragraphs, and incorporates the same
        as though fully set forth herein.

77.     Plaintiff in good faith complained to management of race discrimination
        and disparate treatment at the hands of DH Caso.

78.     That by formally protesting the conditions of his work place with
        management on the basis of race, Plaintiff engaged in protected
        activity under 42 U.S.C § 1981.

79.     Immediately thereafter, Plaintiff was subject to retaliation when he was
        terminated on August 31, 2008.

80.     That there was a causal connection between Plaintiff's engagement in
        protected activity and the retaliatory treatment he suffered and
        defendants have no legitimate reasons for this conduct.

81.     Defendants, and each of them, engaged in a pattern of illegal
        retaliation because the Plaintiff had complained of national origin/ race
        discrimination and disparate treatment on that basis to the defendant
        had no legitimate business reason for these actions.

82.     As a direct and proximate result of Defendant's willful, knowing and
        intentional discrimination against him, Plaintiff has suffered and will
        continue to suffer pain and suffering and extreme and severe mental
        anguish and emotional anguish and emotional distress; he has incurred
        and will continue to incur medical expenses for treatment by health
        care professionals, and for other incidental expenses, and he has
        suffered and will continue to suffer a loss of earnings and other

employment benefits and job opportunities. Plaintiff is thereby entitled
to general and compensatory damages in amounts to be proven at
trial.

83.      As a further and proximate result of Defendant's violations of 42
         U.S.C. § 1981, Plaintiff has been compelled to retain the services of
         counsel in an effort to enforce the terms and conditions of the
         employment relationship with defendants and each of them, and has
         thereby incurred and will continue to incur, legal fees and costs, the full
         nature and extent of which are presently unknown to the Plaintiff.
         Plaintiff requests that attorney fees be awarded.

84.      Defendants conduct as described herein was malicious and
         oppressive, and done with a conscious disregard of Plaintiffs rights.
         The acts were performed with the knowledge of an employers'
         economic power over its employees. Defendant ratified the unlawful
         conduct of its employees in this action. Consequently, Plaintiff is
         entitled to punitive or exemplary damages from all Defendants.

## FOURTH CAUSE OF ACTION

### Retaliation under NYSHRL, Executive Law Section 290, et seq.
### Against All Defendants and Each of them

85.     Plaintiffs repeats and re-alleges by reference each and every allegation
        contained in the above stated paragraphs, and incorporates the same
        as though fully set forth herein.

86.     Plaintiff in good faith complained to management on August 25th, 2008
        about the discrimination and disparate treatment on the basis of race
        that he suffered in his workplace at the hands of DH Caso.

87.     That by formally protesting the conditions of his work place with
        management on the basis of race, Plaintiff engaged in protected
        activity under the NYSHRL, Executive Law Section 290, *et seq.*

88.     Immediately thereafter, Plaintiff was subject to retaliation 6 days later
        when he was terminated on August 31, 2008.

89.     That there was a causal connection between Plaintiff's engagement in
        protected activity and his termination, and that defendant's reasons for
        terminating Plaintiff are pretextual as a matter of law.

90.          Defendants, and each of them, engaged in a pattern of illegal
             retaliation because the Plaintiff had complained about Defendant had
             no legitimate business reason for any such actions as described
             above.

91.          As a direct and proximate result of Defendant's willful, knowing and
             intentional discrimination against him, Plaintiff has suffered and will
             continue to suffer pain and suffering and extreme and severe mental
             anguish and emotional anguish and emotional distress; he has incurred
             and will continue to incur medical expenses for treatment by health
             care professionals, and for other incidental expenses, and he has
             suffered and will continue to suffer a loss of earnings and other
             employment benefits and job opportunities. Plaintiff is thereby entitled
             to general and compensatory damages in amounts to be proven at
             trial.

        WHEREFORE, Plaintiff seeks judgment in accord with each and every stated
cause of action herein.

Dated: November 9, 2009
Rochester, New York

CHRISTINA A. AGOLA, PLLC

/s/ Christina A. Agola, Esq.
Christina A. Agola, Esq.

Attorneys for Plaintiff
2100 First Federal Plaza
28 East Main Street
Rochester, New York 14614
Tel: 585. 262.3320
Fax: 585.262.3325

cagola@agolalaw.com