UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PAUL A. RANKIN,

                        Plaintiff,

v.

CITY OF NIAGARA FALLS, et al.,

                        Defendants.

_____

**INTERIM DECISION AND ORDER**

09-CV-00974(A)(M)

       This case has been referred to me by Hon. Richard J. Arcara to decide all non-dispositive motions, hear and report on all dispositive motions, and otherwise supervise pretrial proceedings [6, 58].[1] Before me are plaintiff's *pro se* motion to vacate the Stipulation of Dismissal and reinstate this action [53], and the cross-motion by Christina A. Agola, Attorneys and Counselors at Law, PLLC to withdraw as plaintiff's attorneys [56]. Following oral argument of the motions on April 27, 2012 [69], I scheduled an evidentiary hearing for May 23, 2012, and stated that a written decision would follow.

       For the parties' benefit, this Interim Decision and Order sets forth my view of the proceedings at the present time. Should any party (or counsel) wish to argue why I should not proceed in the manner indicated, they may make a written submission by May 15, 2012.

## BACKGROUND

       Plaintiff commenced this action on November 10, 2009 [1], alleging racial discrimination and retaliation in violation of 42 U.S.C. §1981 and the New York State Human Rights Law (N. Y. Executive Law §290). On November 4, 2011, defendants moved for summary

---

[1] Bracketed references are to the CM/ECF docket entries.

judgment [34]. At plaintiff's request, his deadline for responding to that motion was extended several times [43, 46, 49], with the final deadline being March 23, 2012 [49, 50]. Plaintiff did not file a response by that deadline.

On March 30, 2012 the parties filed a Stipulation of Dismissal [51], signed by counsel for all parties, stating that the action "is dismissed in its entirety, with each party to bear its own costs and attorneys' fees". By Text Order dated March 31, 2012 [52], Judge Arcara approved the Stipulation and ordered the Clerk of this court to close the case.

On April 5, 2012 plaintiff moved to vacate the Stipulation of Dismissal [53], alleging that he "did not consent to Attorney Christina A. Agola unilateral bias decision to submit a Stipulation of Dismissal, Stipulation of Discontinuance". Rankin Affidavit [54], p. 2. Ms. Agola cross-moves for leave to withdraw as plaintiff's attorney "in light of the misrepresentations made by Mr. Rankin". Agola Declaration [56-1], ¶2. She states that her "office conducted a near two hour telephonic meeting with [plaintiff] on March 23, 2012 wherein we discussed the Defendant's Motion for Summary Judgment, and Plaintiff's response to the same . . . . Following all of that, Mr. Rankin expressly authorized this office to agree to a voluntary discontinuance of this matter provided that Defendant would agree to waive its claim for costs and/or fees". Id., ¶¶6, 8.

Defendants "vehemently oppose Plainitff's motion as baseless drivel that must be dismissed", arguing that "Federal Rule of Civil Procedure 60(b) sets forth several bases for setting aside an order; however, Plaintiff has not offered a droplet of proof to demonstrate that any of those bases exist in this case". Defendants' Memorandum of Law [63], p. 3.

ANALYSIS

A.	Plaintiff's Motion to Vacate the Stipulation of Dismissal

Defendants argue that if plaintiff did not authorize Ms. Agola to discontinue the action, his "recourse is neither against Defendants nor pursuant to Fed. R. Civ. P. 60(b). In that case, Plaintiff's only recourse would be in a claim against the individual or organization that incorrectly reported Plainitff's consent to the voluntary dismissal of this case." Defendants' Memorandum of Law [63], p. 7, n. 2.

At first glance, that argument appears compelling. "Normally, the conduct of an attorney is imputed to his client, for allowing a party to evade the consequences of the acts or omissions of his freely selected agent would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent." S.E.C. v. McNulty, 137 F.3d 732, 739 (2d Cir. 1998), cert. denied, 525 U.S. 931 (1998). *See also* Link v. Wabash Railroad Co., 370 U.S. 626, 633-34 (1962); Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 396 (1993).[2]

However, there are limits to this rule. "From the nature of the attorney-client relationship itself, an attorney derives authority to manage the conduct of litigation on behalf of a client, including the authority to make certain procedural or tactical decisions . . . . But that authority is hardly unbounded. Equally rooted in the law is the principle that, without a grant of authority from the client, an attorney cannot compromise or settle a claim." Hallock v. State, 64 N.Y.2d 224, 230 (1984). "[T]he decision to settle is the client's to make, not the attorney's . . . .

---

[2]	"And if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice." Link, 370 U.S. at 634, n. 10.

[T]he utter want of power of an attorney, by virtue of his general retainer only, to compromise his client's claim, cannot, we think, be successfully disputed". Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989) (*quoting* United States v. Beebe, 180 U.S. 343, 352 (1901)).

"On the other hand, if an attorney has apparent authority to settle a case, and the opposing counsel has no reason to doubt that authority, the settlement will be upheld." Fennell, 865 F.2d at 502. "[I]n order to create apparent authority, the *principal must manifest to the third party* that he consents to have the act done on his behalf by the person purporting to act for him . . . . A client does not create apparent authority for his attorney to settle a case merely by retaining the attorney". Id. (emphasis in original). *See also* In re Artha Management, Inc., 91 F.3d 326, 329 (2d Cir. 1996) ("a client does not automatically bestow the authority to settle a case on retained counsel"); Preveden v. Hahn, 36 F.Supp. 952, 953 (S.D.N.Y. 1941) ("An attorney has no right to settle his client's case nor to consent to a dismissal of it upon the merits . . . without express authority from his client. No such authority is implied in a mere retainer").

"Nevertheless, because of the unique nature of the attorney-client relationship, and consistent with the public policy favoring settlements, we presume that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so. In accordance with that presumption, any party challenging an attorney's authority to settle the case under such circumstances bears the burden of proving by affirmative evidence that the attorney lacked authority." Artha Management, 91 F.3d at 329. That burden of proof "is not insubstantial". Id.

Plaintiff has submitted "affirmative evidence" through his Affidavit [54] stating that he did not authorize Ms. Agola to discontinue the action. However, Ms. Agola's Declaration

[56-1] states that he *did* authorize her to do so. Since I may not "show[ ] a preference for one piece of paper to another", In re Criminal Contempt Proceedings Against Crawford, 133 F.Supp.2d 249, 253 (W.D.N.Y. 2001) (Arcara, J.), the factual dispute raised by these conflicting submissions can only be resolved by an evidentiary hearing. "When a factual issue is disputed, oral testimony is preferable to affidavits." Id.

Although the discussions between plaintiff and Ms. Agola or her office would normally be protected by the attorney-client privilege, that privilege "can be waived in the context of a dispute over settlement authority". Hodges v. Potter, 2005 WL 6336682, *1 (D.D.C. 2005). "An attorney-client privilege may be waived if a party injects into . . . litigation an issue that requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct." Grant Thornton v. Syracuse Savings Bank  961 F.2d 1042, 1046 (2d Cir.1992). Therefore, Ms. Agola and/or others from her office may testify as to their discussions with plainitff concerning discontinuance of the action.

**B.     Ms. Agola's Cross-Motion for Leave to Withdraw as Plaintiff's Attorney**

Recognizing that at the present time there is no pending action, Ms. Agola argues that "it is apparent that this office cannot continue to represent Mr. Rankin in this matter *in the event the Court grants his motion*, based on the disparaging (and false) comments he has made to the Court about this office's representation of him". Agola Supplemental Declaration [67], ¶7 (emphasis added) .

Specifically, she alleges that plaintiff misrepresented whether he had authorized her to discontinue the action (Agola Declaration [56-1], ¶8), and that he also "indicated that this

office acted in contradiction to the simple language of its own retainer agreement, in particular, with reference to Paragraph 6, which details the disbursement fees that a client is responsible for". Agola Supplemental Declaration [67], ¶4. Contrary to her latter assertion, ¶6 of the retainer agreement says nothing about disbursements. Instead, it states that "<u>No settlement shall be made without full knowledge and consent of both attorney and the client</u>". Rankin Affirmation [54], p. 4 of 21 (emphasis in original).

However, since Ms. Agola seeks leave to withdraw as plaintiff's attorney only "in the event the Court grants his motion", her cross-motion need not be addressed unless plaintiff's motion is granted. If it is determined (following the evidentiary hearing) that plaintiff *did* in fact authorize Ms. Agola to terminate the action, then her cross-motion will be moot. However, if it is determined that he did *not* authorize her to do so, then he has not made any misrepresentations concerning her conduct.

C.   **Status of Defendants' Summary Judgment Motion**

Obviously, unless plaintiff's motion to vacate the dismissal is granted, there is no need for me to consider defendants' motion for summary judgment [34]. However, for the parties' benefit I will note that if plaintiff's motion is granted, I will likely consider defendants' motion for summary judgment [34] - which I have not reviewed at this point - to be essentially unopposed, since plaintiff did not submit opposing papers by the March 23, 2012 deadline [49, 50].[3] See <u>Frantz v. United States Department of Defense</u>, 260 Fed.Appx. 325, 2007 WL 4563948, *1 (2d Cir. 2007) (Summary Order) (plainitff "did not demonstrate that his attorney's failure to

---

[3]   No application for an extension of, or relief from, that deadline has been submitted.

oppose defendant's summary judgment motion was excusable neglect . . . . [I]n general, a party is bound by the inexcusable conduct of her counsel, unless there is a particularized showing of exceptional circumstances explaining counsel's gross negligence").

However, "the fact that there has been no response to a summary judgment motion does not . . . mean that the motion is to be granted automatically". Champion v. Artuz, 76 F.3d 483, 486 (2d Cir.1996). "Instead, the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir.2004). *See also* Amaker v. Foley, 274 F.3d 677, 681 (2d Cir.2001) ("even when a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If it has not, summary judgment is inappropriate, for no defense to an insufficient showing is required").

## CONCLUSION

Subject to possible reconsideration in view of any supplemental submissions by May 15, 2012 (as previously invited), the evidentiary hearing will take place on May 23, 2012 commencing at 9:00 a.m.

Dated: May 2, 2012

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge