UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAUL A. RANKIN,                                          **REPORT AND**
                                                         **RECOMMENDATION**
                                    Plaintiff,

v.
                                                         09-CV-00974(A)(M)
CITY OF NIAGARA FALLS, et al.,

                                    Defendants.

_____

        This case has been referred to me by  Hon. Richard J. Arcara to decide all non-

dispositive motions and to hear and report on all dispositive motions [6, 58].[1] Before me are

plaintiff's *pro se* motion to vacate the Stipulation of Dismissal and reinstate this action [53], and

the cross-motion by Christina A. Agola, Attorneys and Counselors at Law, PLLC to withdraw as

plaintiff's attorneys [56]. Following oral argument of the motions on April 27, 2012 [69], I

issued an Interim Decision and Order on May 2, 2012 [72], and conducted an evidentiary hearing

on May 23, 2012 [76].

        For the following reasons, I recommend: (1) that plaintiff's motion [53] be

granted; (2) that plaintiff be allowed an additional 45 days to submit papers in opposition to

defendants' motion for summary judgment; (3) that plaintiff's attorney, Christina Agola, be

ordered to show cause why she should not be sanctioned pursuant to Fed. R. Civ. P. ("Rule")

---

[1]        Bracketed references are to CM/ECF docket entries.

11(c)(3) and/or 28 U.S.C. §1927;[2] and (4) that her law firm's cross-motion for leave to withdraw

as plaintiff's attorneys [56] be granted, subject to the imposition of sanctions, if warranted.

## BACKGROUND

Plaintiff commenced this action on November 10, 2009, alleging racial

discrimination and retaliation in violation of 42 U.S.C. §1981 and the New York State Human

Rights Law (N.Y. Executive Law §290). Complaint [1]. According to Ms. Agola, plaintiff "was

advised of the weakness of his claims when he retained this office". Agola declaration [75], p. 5.[3]

"When we prepared Mr. Rankin's complaint to be filed with the Court, we admonished Mr.

Rankin that the fact that he rejected nine (9) job offers could play a major role in establishing not

only liability but damages as well. We promised Mr. Rankin that we would determine whether

any of those . . . job offers were retaliatory, *i.e.*, whether they were demotions, through discovery,

but that we were concerned about this going forward." Id., ¶¶22, 23.[4]

---

[2]     "The authority of a Magistrate Judge to finally resolve a motion for sanctions under Rule 11 is unsettled in the Second Circuit." Wik v. City of Rochetser, 2010 WL 3062813, *1 (W.D.N.Y. 2010) (Siragusa, J.); Kiobel v. Millson, 592 F.3d 78 (2d Cir. 2010). Erring on the side of caution, I will address the possibility of sanctions in this Report and Recommendation, rather than in a Decision and Order.

[3]     Although the discussions between plaintiff and Ms. Agola or her office would normally be protected by the attorney-client privilege, that privilege is "waived in the context of a dispute over settlement authority". Hodges v. Potter, 2005 WL 6336682, *1 (D.D.C. 2005). "An attorney-client privilege may be waived if a party injects into . . . litigation an issue that requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct." Grant Thornton v. Syracuse Savings Bank, 961 F.2d 1042, 1046 (2d Cir.1992).

[4]     Notwithstanding these supposed concerns, Ms. Agola's office agreed to take this case on a contingent fee basis, and plaintiff advanced $7,500 for disbursements. *See* Retainer Agreement [77-1], ¶¶2, 3, 7.

Pretrial discovery was completed in July 2011 [22]. Ms. Agola testified that "at the conclusion . . . of that long session of information gathering, I could only come to one conclusion" ([80],[5] p. 14), namely that she "could not certify to the Court under Rule 11 that there were any material issues of fact with regard to his claims". Agola declaration [75], ¶24. She stated that "this decision was made after a full course of paper discovery, followed by several depositions". Id., ¶25.

According to Ms. Agola, plaintiff "was aware that defendants would move to dismiss his claims as early as May 7, 2010". Agola declaration [75], p. 4. Defendants moved for summary judgment over a year later, on November 4, 2011 [34]. Ms. Agola alleges that by letter dated November 7, 2011 ([75-2], p. 11 of 11), she sent plaintiff a copy of the motion, stating that "as I have indicated to you repeatedly, there are serious issues with regard to liability and mitigation that may preclude you from recovery. Please contact me immediately after you review these documents." However, plaintiff testified that he did not receive a copy of the motion from her, but instead discovered it himself on PACER ([80], pp. 10-11).

In Ms. Agola's own words, "at the conclusion of discovery, and in thoughtful review and consideration of the Defendant's Motion for Summary Judgment, my experience as an 18 year veteran of handling discrimination cases [led] me to the conclusion that [plaintiff] cannot in good faith, on this record, raise a material issue of fact sufficient to defeat the Defendant's Motion". Agola declaration [75], ¶29. She also realized (as she later told plaintiff) that she "was obligated as an Officer of the Court to advise the Court of this fact". Id., ¶71.

---

[5]     Chambers transcription of the May 23, 2012 evidentiary hearing.

However, she did not do so. Instead, on December 5, 2011 (the day her opposing papers were due), she moved pursuant to Rule 6(b) for a 30-day extension of her deadline for opposing the motion, assuring me that "[t]he Plaintiff's opposition to defendant's Motion for Summary Judgment is substantive". Agola declaration [42-1], ¶9. Citing several time commitments in other cases (id., ¶¶5-6), she claimed that "[i]n good faith, your Declarant anticipated filing and serving the Plaintiff's Opposition to Defendant's Motion for Summary Judgment . . . but due to the extraordinary circumstances, your Declarant requests a brief extension of time . . . . [Y]our Declarant fears the Plaintiff's rights would be severely prejudiced, given the circumstances of preparing for trials and perfecting responses to several Motions for Summary Judgment. Based on the good cause contained herein, your Declarant respectfully requests an adjournment of 30 days". Id., ¶¶7, 9, 10 (emphasis added). With defendants' consent (id., ¶8), I granted her request, and extended the deadline for submission of opposing papers to January 4, 2012 [44].

On January 4, 2012, the day her opposing papers were again due, Ms. Agola moved for a second extension of the deadline. This time, she cited a *different* set of time commitments in unrelated cases (Agola declaration [45-1], ¶¶4-7), but again asserted that "Plaintiff's opposition to defendant's Motion for Summary Judgment is substantive and . . . Plaintiff's rights would be severely prejudiced" absent a further extension (id., ¶10). Once again defendants consented (id., ¶9), and once again I granted her request, extending the deadline for submission of opposing papers to February 23, 2012 [47].

On February 23, 2012 (the last day of the second extended deadline), Ms. Agola moved for a *third* extension of the deadline, citing yet *another* set of time commitments in

unrelated cases (Agola declaration [48-1], ¶¶10-14), and swearing once again that "Plaintiff's opposition to defendant's Motion for Summary Judgment is substantive" (id., ¶17).  With defendants' consent (id., ¶16), I granted her request for the third time, and extended the deadline for submission of opposing papers to March 23, 2012 [50] - over four months after the motion had been filed.

On March 21, 2012, Ms. Agola's paralegal, Melinda Akins, sent an e-mail [77-2] to defendants' attorney, Scott DeLuca, stating that "we wanted to let you know that we have been involved in discussions with our client regarding his intentions in continuing this matter. We will know on or before March 23 if he wishes to stipulate to discontinue the matter." However, at the May 23, 2012 hearing she admitted that her office had *not* spoken to plaintiff as of that date ([80], p. 22). She testified that she "just wanted him to be advised that he may expect the stipulation of discontinuance at that time . . . . We would either be filing a response to the motion for summary judgment or advising that we would be stipulating to discontinue." Id., p. 22.

On March 22, 2012, plaintiff "e-mailed the office . . . with his responses to Defendant's' Motion for Summary Judgment". Sneddon declaration [75-2], ¶6. His e-mail stated that "Defendants Summary Judgment solidifies/confirms/and legally substantiates Plaintiffs complaint in totality" (id., p. 8), and included a lengthy discussion of why he felt this was so.

In her declaration dated May 15, 2012 [75], Ms. Agola stated that during a conference call on March 23, 2012, she told plaintiff that "as an Officer of the Court, I could not certify that there was a material issue of fact under Rule 11 to defeat the Defendant's Motion" (id., ¶70), and that plaintiff "told me that I had to 'do what's right', and if discontinuing the case was the 'right thing' then I should do 'what is right'" (id. ¶72). At the hearing, she testified that

she told plaintiff on March 23 that "the record as I inherited it would not lead to anything other than potentially sanctions from this court and most certainly costs . . . and I said Sir, we cannot take that risk . . . I told him I had to do the right thing and the right thing under Rule 11 and the right thing for Mr. Rankin's interest is file a stipulation . . . and he said Ms. Agola, you have to do the right thing". [80], p. 16. She then told him "I need to go now. You talk this over with the family sir, but *this is my decision.* I never heard back from him." Id. (emphasis added).

      Ms. Agola's associate attorneys and staff members have submitted declarations stating that later that afternoon plaintiff called back and confirmed that he understood that his case would be dismissed. *See* declarations of Richard Franco [75-1], William Sneddon [75-2], Melinda Akins [75-3] and Ryan Woodworth [75-4].[6] Ms. Akins and Messrs. Franco and Sneddon also testified at the hearing. However, although plaintiff admits that Ms. Agola told him that she could not in good faith oppose the summary judgment motion, he insists that he did not authorize her to discontinue the action ([54], p. 2; [71], p. 5; [80], pp. 3, 5, 7,8).

      On the morning of Wednesday, March 28, 2012, Ms. Agola e-mailed my law clerk, Matthew Yusick, stating that "[w]e propose to resolve the matter by having each party bear their own costs and fees which is a fairly standard practice. Opposing Counsel stated he will not waive statutory costs and we cannot agree to that. Any assistance the Court can render here would be helpful" ([75-3], p.11). After checking with me, Mr. Yusick responded that we would be willing to conduct a settlement conference, failing which we would set another deadline for

---

      [6]      Each declaration uses exactly the same language in describing the conversation between plaintiff and Ms. Agola, and between plaintiff and Mr. Sneddon, strongly suggesting that they were all drafted by the same person.

plaintiff's response to the summary judgment motion (id).[7] In reply, Ms. Agola stated: "we feel

we may be able to resolve this. If we cannot resolve this by Friday, we will file a Rule 6 b motion

to extend the time to respond. I am currently preparing for a trial date certain of April 17 before

Judge Siragusa and I will need time to complete my submission" (id.).

On Friday, March 30, 2012 the parties filed a Stipulation of Dismissal [51], signed

by counsel for all parties, stating that the action "is dismissed in its entirety, with each party to

bear its own costs and attorneys' fees". By Text Order dated March 31, 2012 [52], Judge Arcara

approved the Stipulation, and ordered the Clerk of this court to close the case.

On April 5, 2012 plaintiff moved to vacate the Stipulation of Dismissal [53],

alleging that he "did not consent to Attorney Christina A. Agola unilateral bias decision to

submit a Stipulation of Dismissal, Stipulation of Discontinuance". Rankin affidavit [54], p. 2.

Ms. Agola then cross-moved for leave to withdraw as plaintiff's attorney "in light of the

misrepresentations made by Mr. Rankin". Agola declaration [56-1], ¶2.

## ANALYSIS

### A.    Should the Action be Reopened?

Defendants argue that if plaintiff did not authorize Ms. Agola to discontinue the

action, his "recourse is neither against Defendants nor pursuant to [Rule] 60(b). In that case,

Plaintiff's only recourse would be in a claim against the individual or organization that

---

[7]    At that time I was unaware that Ms. Agola had concluded - and had told plaintiff - that she could not oppose the motion in good faith. Had I known that, I would not have considered further extending her deadline for submitting opposing papers.

incorrectly reported Plaintiff's consent to the voluntary dismissal of this case." Defendants'

Memorandum of Law [63], p. 7, n. 2.

In most circumstances, defendants would be correct. "Normally, the conduct of an

attorney is imputed to his client, for allowing a party to evade the consequences of the acts or

omissions of his freely selected agent would be wholly inconsistent with our system of

representative litigation, in which each party is deemed bound by the acts of his lawyer-agent."

S.E.C. v. McNulty, 137 F.3d 732, 739 (2d Cir. 1998), cert. denied, 525 U.S. 931 (1998). *See also*

Link v. Wabash Railroad Co., 370 U.S. 626, 633-34 (1962); Pioneer Investment Services Co. v.

Brunswick Associates Ltd. Partnership, 507 U.S. 380, 396 (1993).[8]

However, there are limits to this rule. "From the nature of the attorney-client

relationship itself, an attorney derives authority to manage the conduct of litigation on behalf of a

client, including the authority to make certain procedural or tactical decisions . . . . But that

authority is hardly unbounded. Equally rooted in the law is the principle that, without a grant of

authority from the client, an attorney cannot compromise or settle a claim." Hallock v. State, 64

N.Y.2d 224, 230 (1984). "[T]he utter want of power of an attorney, by virtue of his general

retainer only, to compromise his client's claim, cannot, we think, be successfully disputed".

Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989) (*quoting* United States  v. Beebe, 180

U.S. 343, 352 (1901)).

"[I]f an attorney has apparent authority to settle a case, and the opposing counsel

has no reason to doubt that authority, the settlement will be upheld." Fennell,  865 F.2d at 502.

---

[8]     "And if an attorney's conduct falls substantially below what is reasonable under the
circumstances, the client's remedy is against the attorney in a suit for malpractice." Link, 370 U.S. at
634, n. 10.

However, "[a] client does not create apparent authority for his attorney to settle a case merely by retaining the attorney". Id. (emphasis in original). *See also* In re Artha Management, Inc., 91 F.3d 326, 329 (2d Cir. 1996) ("a client does not automatically bestow the authority to settle a case on retained counsel"); Preveden v. Hahn, 36 F.Supp. 952, 953 (S.D.N.Y. 1941) ("An attorney has no right to settle his client's case nor to consent to a dismissal of it upon the merits . . . without express authority from his client. No such authority is implied in a mere retainer").

      "Nevertheless, because of the unique nature of the attorney-client relationship, and consistent with the public policy favoring settlements, we presume that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so. In accordance with that presumption, any party challenging an attorney's authority to settle the case under such circumstances bears the burden of proving by affirmative evidence that the attorney lacked authority." Artha Management, 91 F.3d at 329. That burden of proof  "is not insubstantial". Id.; United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO, 986 F.2d 15, 20 (2d Cir. 1993).

      While I recognize the nature of plaintiff's burden on this motion, I conclude that he has satisfied that burden. Although defendants argue that plaintiff "was told of Ms. Agola's recommendation (filing a stipulation of dismissal) and consented to that recommendation" (defendants' Post-Hearing Memorandum [79], p. 5), the record clearly shows that Ms. Agola did not make a "recommendation" to plaintiff - instead, she told him categorically that she would not oppose the motion. "I explained that as an Officer of the Court, I could not certify that there was a material issue of fact under Rule 11 sufficient to defeat the Defendant's Motion." Agola declaration [75], ¶70. "I told him I had to do the right thing and the right thing . . . is to file a

stipulation . . . . I need to go now, you talk this over with the family sir, but *this is my decision*. I

never heard back from him." [80], p. 16 (emphasis added).

That decision was not hers to make. "[T]he decision to settle is the client's to

make, not the attorney's." <u>Fennell</u>, 865 F.2d at 502. Indeed, plaintiff's Retainer Agreement with

Ms. Agola's firm expressly stated that "<u>No settlement shall be made without full knowledge and</u>

<u>consent of both attorney and the client</u>". (77-1], ¶6) (underlining in original). In making that

decision, plaintiff was entitled to truthful information from his attorney. "The duty to deal fairly,

honestly and with undivided loyalty superimposes onto the attorney-client relationship a set of

special and unique duties, including . . . avoiding conflicts of interest, operating competently, . . .

and honoring the clients' interests over the lawyer's." <u>In re Hayes</u>, 183 F.3d 162, 168 (2d

Cir.1999).

Unfortunately, it appears that plaintiff did not get completely truthful information

from Ms. Agola on March 23, 2012. Whereas she told him at that time that she could *not* oppose

the summary judgment motion, two days earlier her paralegal told defendants' attorney that her

office *would* oppose the motion if plaintiff did not consent to the dismissal ([80], p. 22), and on

March 28, 2012 Ms. Agola told my law clerk that she *would* oppose the motion if defendants'

request for fees and costs could not be resolved [9]- provided that she could obtain yet another

---

[9]     Significantly, defendants' motion did not even mention entitlement to fees or costs [34, 40].

extension of her deadline (which would be her fourth), because she was preparing for a trial

before Judge Siragusa ([75-3], p.11).[10]

Therefore, even if I were to find that plaintiff had agreed with the "decision"

which Ms. Agola' announced to him on March 23 - and I do not - I would nevertheless conclude

that his agreement, being influenced by his attorney's lack of complete candor with him, cannot

be enforced. *See* McKnight v. Dean  270 F.3d 513, 519 (7th Cir. 2001) ("We do not condone

Dean's action in forcing McKnight to settle. If McKnight was pigheaded and wanted to tilt at

windmills, that was his right. Dean didn't have to continue representing him in those

circumstances, but he could not . . . use deception to induce his client to settle against the client's

will. The decision to settle is the client's alone.")

Accordingly, I recommend that plaintiff's motion to reopen this action be granted.


**B.      Should Plaintiff Be Given Additional Time to Oppose the Motion?**

In my Interim Decision and Order [72], I stated that if the case were to be

reopened, I would likely analyze defendants' motion for summary judgment as unopposed, since

Ms. Agola failed to file opposing papers by the deadline of March 23, 2012 (id., pp. 6-7). The

general rule is that a party may not "evade the consequences of the acts or omissions of his freely

---

[10]      Last week, Ms. Agola was reprimanded by the Second Circuit for repeatedly missing
deadlines. In re Agola, 2012 WL 2025389, *1 (2d Cir. 2012) (Summary Order). In proceedings before the
Second Circuit Committee on Admissions and Grievances, she "stated that her failures to comply with
scheduling orders 'were unintentional and were the result of flaws in her law office management which
have since been corrected . . . . Attorney Agola testified that she now 'gets it' and has taken steps 'to
avoid lapses in her practice management.'" Id., *11. However, based on her performance in this case, I
question whether Ms. Agola "gets it" even now.

selected agent". <u>McNulty</u>, 137 F.3d at 739; <u>Frantz v. United States Department of Defense</u>, 260

Fed.Appx. 325, 2007 WL 4563948, *1 (2d Cir. 2007) (Summary Order).

      Upon further reflection, I now believe that the general rule should not apply in

these circumstances. "[U]nder agency principles, a client cannot be charged with the acts or

omissions of an attorney who has abandoned him". <u>Maples v. Thomas</u>, 132 S.Ct. 912, 924 (2012).

"Common sense dictates that a litigant cannot be held constructively responsible for the conduct

of an attorney who is not operating as his agent in any meaningful sense of that word." <u>Id.</u> at 923.

      It is now quite clear to me that by March 23, 2012, Ms. Agola was not acting as

plaintiff's agent "in any meaningful sense of that word". Whereas the decision as to whether or

not to settle a case belongs to the client alone, Ms. Agola did not give plaintiff a choice - instead,

she told him that it was *her* decision not to file opposing papers,[11] even though her paralegal

previously told defense counsel - and Ms. Agola later told my law clerk - that she would file

opposing papers if necessary.

      I recognize that granting a further extension of time for submitting papers in

opposition to the motion is in some sense unfair to defendants - who, having already consented to

several extensions, are entitled to have their summary judgment motion decided. However, under

the unusual circumstances of this case, I believe that plaintiff should be given one final

opportunity to oppose the motion, if he can do so in good faith.

      Since Ms. Agola has stated that she cannot oppose the motion consistent with her

obligations under Rule 11, I will not force (nor would I allow) her to do so. Therefore, her motion

---

[11]    "I need to go now, you talk this over with the family sir, but this is my decision." [80], p. 16.

to withdraw as plaintiff's attorney [56] should be granted (although not for the reasons requested), subject to the possible imposition of sanctions, for reasons to be discussed.[12]

      If my recommendation to reopen this action is adopted by Judge Arcara, then (if so inclined) plaintiff may file papers in opposition to the motion within 45 days thereafter, either through new counsel or on his own.[13] If he does so, then defendants may reply within 14 days the filing of plaintiff's papers, and the motion will then be deemed submitted.

      However, even if plaintiff does not file papers in opposition to the motion, I will still need to determine whether summary judgment is warranted. *See* Amaker v. Foley, 274 F.3d 677, 681 (2d Cir.2001) ("even when a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If it has not, summary judgment is inappropriate, for no defense to an insufficient showing is required").

---

[12]    Ms. Agola sought to withdraw "in light of the misrepresentations made by Mr. Rankin"(Agola declaration [56-1], ¶2). Since she has now stated that she can no longer assert plaintiff's claims in good faith, no point would be served by her continuing to represent him in any event. However, her withdrawal at this point should be conditioned upon the possibility of sanctions for her earlier acts and omissions (*see* Point C).

[13]    Annexed hereto is a "Notice to *Pro Se* Litigant Regarding Rule 56 Motion For Summary Judgment", which details the requirements for opposing a motion for summary judgment. I remind plaintiff that Rule 11's obligations of good faith apply not only to attorneys, but also to unrepresented parties. *See* Rule 11(b).

**C.      Are Sanctions Warranted?**

Defendants point out that "the implications of this case for Ms. Agola are quite serious. If this Court gives credence to Plaintiff's argument and grants his motion, this Court would also be concluding that Ms. Agola signed and submitted the stipulation of dismissal without authorization from Mr. Rankin, in clear violation of [Rule] 11. . . . Any such finding by this Court would seem to warrant consideration of [Rule] 11(c)(3)." Defendants' Post-Hearing Memorandum [79], p. 4, n. 1.[14]

I do not approach the subject of sanctions with any enthusiasm. Recognizing not only their potential financial consequences, but also their "extrajudicial impact . . . on the reputation of attorneys and firms",[15] courts "do not undertake lightly a decision to impose sanctions". Schiff v. United States, 919 F.2d 830, 834 (2d Cir.1990). Nevertheless, "ready as we are to protect and enforce a litigant's rights, we must be equally willing to employ lawful sanctions as a means of preventing needless waste of the court's time and resources". Id.

In considering whether to impose sanctions under Rule 11, the Second Circuit "has cautioned district courts to avoid hindsight and resolve all doubts in favor of the signer" of a paper submitted to the court. Motown Productions, Inc. v. Cacomm, Inc., 849 F.2d 781, 785 (2d Cir.1988). Unfortunately, in light of what Ms. Agola has already told this court, any doubts as to the propriety of sanctions in this case are - in my view, at least - rather hard to come by.

---

[14]      Rule 11(c)(3) states that "[o]n its own, the court may order an attorney . . . to show cause why conduct specifically described in the order has not violated Rule 11(b)".

[15]      5A Wright & Miller, Federal Practice & Procedure (Civil), §1336.1 (3d ed.).

I will assume that Ms. Agola had an objectively reasonable basis for commencing this action in 2009. However, as previously discussed, she admits that she had reservations as to the merits of plaintiff's claims even at that time, and states that upon the completion of discovery (no later than July 2011), she concluded that she could not in good faith oppose the dismissal of plaintiff's claims.

It is at that point that her continued assertion of these claims became problematical. "Rule 11 prohibits 'later advocating' a position that subsequent discovery or research reveals to be factually or legally baseless." 2 Moore's Federal Practice, §11.11[2][a] (Third Ed.). "Although a litigant proceeding in good faith has a right to use civil discovery in attempts to prove the existence of a colorable claim for relief . . . ., [w]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir.1991).[16]

However, instead of "discontinuing her quest", Ms. Agola did just the opposite. On three separate occasions - December 5, 2011, January 4, 2012, and February 23, 2012 - she swore to me that "Plaintiff's opposition to defendant's Motion for Summary Judgment is substantive", and argued that his "rights would be severely prejudiced" if his deadline for opposing the motion was not extended. See Agola declarations ([42-1], ¶¶7, 9;  [45-1], ¶¶8, 10;

---

[16]     See also 1993 Advisory Committee Notes to Rule 11: "[S]ometimes a litigant may have good reason to believe that a fact is true or false . . . but may need discovery, formal or informal . . . to gather and confirm the evidentiary basis for the allegation . . . . [I]f evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention."

and [48-1], ¶¶15, 17).[17]  The word "substantive" means "[h]aving a solid basis; not slight, weak, or transitory" (Oxford English Dictionary (Online Version 2012)), and is synonymous with "substantial".  Roget's International Thesaurus §763.06 (6th Ed. 2001).

Since Rule 6(b) requires a party seeking an extension of a deadline to show "good cause" for the extension, Ms. Agola had to persuade me that plaintiff had a "substantive" (*i.e.*, solid or substantial) basis for opposing the summary judgment motion - for if he lacked such a basis, then there would be no reason to delay the inevitable dismissal of his claims by granting the extension.  *See* 1 Moore's, §6.06[1][a] ("The court is expected to use its discretion to extend time periods in a manner that will 'secure the just, speedy, and inexpensive determination of every action and proceeding,' as stated by Rule 1. In order to secure the 'just, speedy, and inexpensive determination' of an action, a court might well deny a request for an extension of time.")

Therefore, I fail to see how Ms. Agola did not violate Rule 11(b) by repeatedly submitting declarations asserting that plaintiff had a substantive basis for opposing defendants' motion, when she had already concluded that he did not. By signing these declarations, Ms. Agola certified to the court pursuant to Rule 11(b)(1) and (2) that, to the best of her knowledge, "formed after an inquiry reasonable under the circumstances", her assertion (that plaintiff had a "substantive" basis for opposing the motion) was "not being presented . . . [to] cause unnecessary

---

[17]    The fact that Ms. Agola waited until the very last day of each deadline to seek an additional extension is also troubling, as she had no assurance that I would grant the extension even if opposing counsel consented. "The filing of a request for an extension on the final day of the time period . . . is evidence of being remiss in one's duties." Bruce v. County of Rensselaer 2003 WL 22436281, *2 (N.D.N.Y. 2003).

delay", and was "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law".[18]

In fact, her obligations under Rule 11 arose much earlier in the case. Ms. Agola acknowledges that by the close of discovery, she realized that plaintiff's claims could no longer be maintained in good faith. Therefore, she should have counseled plaintiff to discontinue the action at that time, failing which she should have moved to withdraw as his attorney. "If [plaintiff] was pigheaded and wanted to tilt at windmills, that was his right. [His attorney] didn't have to continue representing him in those circumstances." McKnight, 270 F.3d at 519. "[I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should . . . request permission to withdraw." Anders v. State of California, 386 U.S. 738, 744 (1967).

Among the factors to be considered in determining whether sanctions are warranted under Rule 11 is "whether the person has engaged in similar conduct in other litigation". Zlotnick v. Hubbard, 572 F.Supp.2d 258, 272 (N.D.N.Y. 2008) (citing 1993 Advisory Committee Notes). Unfortunately, this is not the first time that Ms. Agola' has been criticized for similar conduct in this district. See Geiger v. Town of Greece, 2008 WL 728471 at *5 (W.D.N.Y. 2008) (Siragusa, J.) ("the Court finds that Plaintiff's counsel [Ms. Agola] violated Rule 11(b)(2) & (3) by asserting and then pursuing a defamation claim that was clearly not warranted by the facts of this case, or by existing law or a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."); Johnson ex rel. United States v. The

---

[18]     I am not the first Judge to express these concerns. "[T]he Court reminds Ms. Agola of her affirmative duty under Rule 11(b) with regard to factual representations made to the Court . . . . Factual misstatements are a recurring problem with Ms. Agola's submissions to the Court." Colombo v. East Irondequoit Central School, 2010 WL 6004378, *10, n. 8 (W.D.N.Y. 2010) (Siragusa, J.).

University of Rochester Medical Center, 715 F. Supp.2d 427, 430 (W.D.N.Y. 2010) (Larimer, J.),

aff'd, 642 F.3d 121 (2d Cir. 2011) ("the Court reaches the inescapable conclusion that plaintiff's

counsel [Ms. Agola] has relentlessly pursued claims which she could not have reasonably

believed had a basis in fact or law").

        By failing to take affirmative steps to discontinue or withdraw from this case at

the conclusion of discovery, Ms. Agola forced defendants to incur the expense of moving for

summary judgment. If that motion is ultimately granted, Ms. Agola may be called upon to

respond for that expense. See City of Yonkers v. Otis Elevator Co., 844 F.2d 42, 49 (2d Cir.

1988) ("Yonkers contends that it only became clear that its fraud claims were groundless after

discovery . . . . Yonkers should not have continued to press the fraud claims at that juncture, thus

requiring Otis to move for summary judgment with respect to them . . . . Sanctions ordered for the

expense of moving to dismiss were therefore appropriate").

        In addition to Rule 11, sanctions may also be appropriate pursuant to 28 U.S.C.

§1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case

unreasonable and vexatiously may be required by the court to satisfy personally the excess costs,

expenses and attorney's fees reasonably incurred because of such conduct."[19] See Burger-Moss v.

Steinman, 127 F.R.D. 452, 453 (S.D.N.Y. 1989) ("After the filing of defendants' motion for

summary judgment . . . plaintiffs' counsel conceded plaintiffs' inability to prove their case. This

was three years after the case had been filed. By putting defendants to the effort and expense of

---

        [19]    Although defendants have not sought this relief, a court "may impose § 1927 sanctions
on a *sua sponte* basis." Lexington Nat. Bail Services, Inc. v. Spence  2007 WL 951767, *6, n.2 (N.D.Ga.
2007). See also Gallop v. Cheney, 642 F.3d 364, 370 (2d Cir. 2011), vacated in part, 667 F.3d 226 (2d
Cir. 2012) ("Pursuant to . . . 28 U.S.C. §1927, and the inherent authority of the Court . . . we may, with
adequate notice and opportunity to be heard, impose sanctions *nostra sponte*.")

preparing the joint motion for summary judgment, counsel for the plaintiffs unreasonably and vexatiously multiplied the proceedings, making an award of attorneys fees appropriate under 28 U.S.C. §1927"). *See also* Johnson, 642 F.3d at 126 (affirming Judge Larimer's award of sanctions against Ms. Agola under 28 U.S.C. §1927).

## CONCLUSION

For these reasons, I recommend: (1) that plaintiff's motion to reopen [53] be granted; (2) that plaintiff be allowed an additional 45 days to submit papers in opposition to defendants' motion for summary judgment; (3) that plaintiff's attorney, Christina Agola, be ordered to show cause why she should not be sanctioned pursuant to Rule 11(c)(3) and/or 28 U.S.C. §1927;[20] and (4) that her law firm's cross-motion for leave to withdraw as plaintiff's attorneys [56] be granted, subject to the imposition of sanctions, if warranted.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by June 30, 2012 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the

---

[20]     If this Report and Recommendation is adopted, I will issue a Text Order setting a deadline for her submissions.

magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: June 13, 2012

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge