UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAUL A. RANKIN,                                          **REPORT AND**
                                                         **RECOMMENDATION**
                            Plaintiff,

v.
                                                         09-CV-00974(A)(M)
CITY OF NIAGARA FALLS, et al.,

                            Defendants.

_____

          This action has been referred to me by Hon. Richard J. Arcara for supervision of

pretrial proceedings [6].[1] By Order dated July 12, 2012 [89], I required plaintiff's attorney,

Christina Agola, to show cause why she should not be sanctioned pursuant to Fed. R. Civ. P.

("Rule") 11(c)(3) and/or 28 U.S.C. §1927 for conduct discussed in my June 13, 2012 Report and

Recommendation [81], which was subsequently adopted by Judge Arcara [87]. In response, she

submitted a Declaration dated August 10, 2012 [90], requesting oral argument (id., ¶41), which

was held on August 31, 2012 [93]. Although I offered to schedule the argument on a date

convenient for her, Ms. Agola elected to have her colleague, Steven LaPrade, appear in her place.

          For the following reasons I find that Ms. Agola has repeatedly and deliberately

violated Rule 11, and conclude that sanctions are warranted.  I recognize that "sanctions should

not be more severe than reasonably necessary to deter repetition of this conduct by the offending

person or comparable conduct by similarly situated persons" (Rule 11 Advisory Committee

Notes, 1993 Amendments). However, as Ms. Agola seems not to have learned from numerous

past warnings and monetary sanctions, it appears that stronger measures are now called for.

_____

[1]          Bracketed references are to CM/ECF docket entries.

In view of Ms. Agola's ongoing and blatant disregard of her Rule 11 obligations, I conclude that the least severe sanction "reasonably necessary" to address her misconduct is suspension from practice before this court for a period of six months. With some regret, but seeing no meaningful alternative under the circumstances, I recommend that this sanction be imposed.[2]

## BACKGROUND

Plaintiff commenced this action on November 10, 2009, alleging racial discrimination and retaliation in violation of 42 U.S.C. §1981 and the New York State Human Rights Law (N.Y. Executive Law §290). Complaint [1]. According to Ms. Agola, plaintiff "was advised of the weakness of his claims when he retained this office". Agola Declaration [75], p. 5.[3] "When we prepared Mr. Rankin's complaint to be filed with the Court, we admonished Mr. Rankin that the fact that he rejected nine (9) job offers could play a major role in establishing not only liability but damages as well. We promised Mr. Rankin that we would determine whether any of those . . . job offers were retaliatory, *i.e.*, whether they were demotions, through discovery, but that we were concerned about this going forward." Id., ¶¶22, 23. Notwithstanding these

---

[2]   Because "[t]he authority of a Magistrate Judge to finally resolve a motion for sanctions under Rule 11 is unsettled in the Second Circuit", Wik v. City of Rochetser, 2010 WL 3062813, *1 (W.D.N.Y. 2010) (Siragusa, J.), Kiobel v. Millson, 592 F.3d 78 (2d Cir. 2010), I am issuing a Report and Recommendation rather than a Decision and Order.

[3]   Although the discussions between plaintiff and Ms. Agola or her office would normally be protected by the attorney-client privilege, that privilege was waived once plaintiff disputed Ms. Agola's authority to settle this case. *See* June 13, 2012 Report and Recommendation [81], p. 3, n. 3.

supposed concerns, Ms. Agola's office agreed to take this case on a contingent fee basis, and

plaintiff advanced $7,500 for disbursements. *See* Retainer Agreement [77-1], ¶¶2, 3, 7.

       According to Ms. Agola, plaintiff "was aware that defendants would move to

dismiss his claims as early as May 7, 2010". Agola Declaration [75], p. 4. Defendants moved for

summary judgment over a year later, on November 4, 2011 [34]. Ms. Agola alleges that by letter

dated November 7, 2011 ([75-2], p. 11 of 11), she sent plaintiff a copy of the motion, stating that

"as I have indicated to you repeatedly, there are serious issues with regard to liability and

mitigation that may preclude you from recovery. Please contact me immediately after you review

these documents."

       By Text Order dated November 7, 2011 [41], I required plaintiff's opposition to

the summary judgment motion to be filed by December 5, 2011. On December 5, Ms. Agola

moved pursuant to Rule 6(b) for a 30-day extension of the deadline for opposing the motion,

assuring me that "[t]he Plaintiff's opposition to defendant's Motion for Summary Judgment is

substantive". Agola Declaration [42-1], ¶9. Citing several time commitments in other cases (id.,

¶¶5-6), she claimed that "[i]n good faith, your Declarant anticipated filing and serving the

Plaintiff's Opposition to Defendant's Motion for Summary Judgment on Monday, December 5,

2011 . . . but due to the extraordinary circumstances, your Declarant requests a brief extension of

time . . . . [Y]our Declarant fears the Plaintiff's rights would be severely prejudiced, given the

circumstances of preparing for trials and perfecting responses to several Motions for Summary

Judgment. Based on the good cause contained herein, your Declarant respectfully requests an

adjournment of 30 days, to January 4, 2012, to file and serve the Plaintiff's Opposition to

Defendant's Motion for Summary Judgment". Id., ¶¶7, 9, 10 (emphasis added). With defendants'

consent (id., ¶8), I granted her request, and extended the deadline for submission of opposing

papers to January 4, 2012 [44].

On January 4, 2012, the day her opposing papers were again due, Ms. Agola

moved for a second extension of the deadline. This time, she cited a *different* set of time

commitments in unrelated cases (Agola declaration [45-1], ¶¶4-7), but again asserted that

"Plaintiff's opposition to defendant's Motion for Summary Judgment is substantive and . . .

Plaintiff's rights would be severely prejudiced" absent a further extension (id., ¶10). Once again

defendants consented (id., ¶9), and once again I granted her request, extending the deadline for

submission of opposing papers to February 23, 2012 [47].

On February 23, 2012 (the last day of the second extended deadline), Ms. Agola

moved for a *third* extension of the deadline, citing yet *another* set of time commitments in

unrelated cases (Agola declaration [48-1], ¶¶10-14), and swearing once again that "Plaintiff's

opposition to defendant's Motion for Summary Judgment is substantive" (id., ¶17).  With

defendants' consent (id., ¶16), I granted her request for the third time, and extended the deadline

for submission of opposing papers to March 23, 2012 [50] - over four months after the motion

had been filed.

On March 22, 2012, plaintiff "e-mailed the office . . . with his responses to

Defendant's' Motion for Summary Judgment". Sneddon Declaration [75-2], ¶6. His e-mail stated

that "Defendants Summary Judgment solidifies/confirms/and legally substantiates Plaintiffs

complaint in totality" (id., p. 8), and included a lengthy discussion of why he felt this was so.

In her Declaration dated May 15, 2012 [75], Ms. Agola stated that during a conference call on

March 23, 2012, she told plaintiff that "as an Officer of the Court, I could not certify that there

-4-

was a material issue of fact under Rule 11 to defeat the Defendant's Motion" (id., ¶70), and that

plaintiff "told me that I had to 'do what's right', and if discontinuing the case was the 'right

thing' then I should do 'what is right'" (id., ¶72).

She testified that she told plaintiff on March 23 that "the record as I inherited it

would not lead to anything other than potentially sanctions from this court and most certainly

costs . . . and I said Sir, we cannot take that risk . . . I told him I had to do the right thing and the

right thing under Rule 11 and the right thing for Mr. Rankin's interest is file a stipulation . . . and

he said Ms. Agola, you have to do the right thing" ([80], p. 16).[4] She then told him "I need to go

now. You talk this over with the family sir, but *this is my decision.* I never heard back from him."

Id. (emphasis added).

On the morning of Wednesday, March 28, 2012, Ms. Agola e-mailed my law

clerk, Matthew Yusick, stating that "[w]e propose to resolve the matter by having each party bear

their own costs and fees which is a fairly standard practice. Opposing Counsel stated he will not

waive statutory costs and we cannot agree to that. Any assistance the Court can render here

would be helpful" ([75-3], p.11). After checking with me, Mr. Yusick responded that we would

be willing to conduct a settlement conference, failing which we would set another deadline for

plaintiff's response to the summary judgment motion (id).[5] In reply, Ms. Agola stated: "we feel

we may be able to resolve this. If we cannot resolve this by Friday, we will file a Rule 6 b motion

---

[4]    Chambers transcription of the May 23, 2012 hearing on plaintiff's motion to reopen the case.

[5]    At that time I was unaware that Ms. Agola had concluded - and had told plaintiff - that she could not oppose the motion in good faith. Had I known that, I would not have considered further extending her deadline for submitting opposing papers.

to extend the time to respond. I am currently preparing for a trial date certain of April 17 before

Judge Siragusa and I will need time to complete my submission" (id.).

On Friday, March 30, 2012 the parties filed a Stipulation of Dismissal [51], signed

by counsel for all parties, stating that the action "is dismissed in its entirety, with each party to

bear its own costs and attorneys' fees". By Text Order dated March 31, 2012 [52], Judge Arcara

approved the Stipulation, and ordered the Clerk of this court to close the case. Thereafter,

plaintiff moved to reopen this action [53], arguing that he did not authorize Ms. Agola to

discontinue the case. In recommending that the motion be granted, I concluded that Ms. Agola

had not given plaintiff a meaningful choice as to whether to discontinue, but instead had

unilaterally told him - on the day opposing papers were due - that she could not oppose the

motion. June 13, 2012 Report and Recommendation [81], pp. 9-11.That recommendation was

subsequently adopted by Judge Arcara [87].


## ANALYSIS

A.      **Should Ms. Agola Be Sanctioned?**

"Although prior to 1983, Rule 11 contemplated the imposition of sanctions only

upon a finding of bad faith, the 1983 revision of the Rule substituted an objective standard of

reasonableness." Sussman v. Bank of Israel, 56 F.3d 450, 456 (2d Cir.), cert. denied, 516 U.S.

916 (1995).

However, that standard  applies only where Rule 11 sanctions are sought by a

party. Where (as here) the possibility of sanctions is raised by the court *sua sponte*, "the

appropriate standard is subjective bad faith".  In re Pennie & Edmonds LLP, 323 F.3d 86, 87 (2d

Cir. 2003). The "subjective bad faith" standard also applies to sanctions under 28 U.S.C. §1927

for unreasonable and vexatious conduct. *See* Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96 (2d Cir.

1997) ("§1927 requires . . . subjective bad faith by counsel").

Therefore, in determining whether sanctions are warranted, I must consider

whether any of the three types of conduct referred to in my Order to Show Cause [89] amount to

"subjective bad faith".

### 1.    Failure to Discontinue or Withdraw Upon Completion of Discovery

I will assume that Ms. Agola had an objectively reasonable basis for commencing

this action in 2009. However, as previously discussed, she admits that she had reservations as to

the merits of plaintiff's claims even at that time. Pretrial discovery was completed in July 2011

[22]. Ms. Agola testified that "at the conclusion . . . of that long session of information gathering,

I could only come to one conclusion" ([80], p. 14), namely that she "could not certify to the

Court under Rule 11 that there were any material issues of fact with regard to his claims". Agola

Declaration [75], ¶24. She stated that "this decision was made after a full course of paper

discovery, followed by several depositions". Id., ¶25. Elsewhere, however, she states that she did

not reach this conclusion until she had fully reviewed defendants' motion for summary judgment

in March, 2012. Agola Declaration [90], ¶11.

"Although a litigant proceeding in good faith has a right to use civil discovery in

attempts to prove the existence of a colorable claim for relief . . . . [w]hen it becomes apparent

that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to

discontinue their quest." Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir.1991).

Since Ms. Agola admits that she had serious doubts as to the viability of plainitff's claims even *prior* to discovery, at some point prior to the filing of defendant's motion for summary judgment she should have inquired of Mr. LaPrade (who conducted much of the discovery) as to what additional information had been generated. She is deemed to know what that inquiry would have revealed. "One who has reasonable grounds for suspecting or inquiring ought to suspect, ought to inquire, and the law charges him with the knowledge which the proper inquiry would disclose . . . . Knowledge of facts, which, to the mind of a man of ordinary prudence, beget inquiry, is actual notice, or, in other words, is the knowledge which a reasonable investigation would have revealed.." Fidelity & Deposit Co. of Maryland v. Queens County Trust Co., 226 N.Y. 225, 233 (1919); The Tompkins, 13 F.2d 552, 554 (2d Cir. 1926).

Having "actual notice" of what that inquiry would have revealed, Ms. Agola did not need defendants' summary judgment motion to tell her that she could no longer continue to assert plaintiff's claims in good faith. At that point, she should have counseled plaintiff to discontinue the action at that time, failing which she should have moved to withdraw as his attorney. "If [plaintiff] was pigheaded and wanted to tilt at windmills, that was his right. [His attorney] didn't have to continue representing him in those circumstances." McKnight v. Dean, 270 F.3d 513, 519 (7th Cir. 2001). "[I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should . . . request permission to withdraw." Anders v. State of California, 386 U.S. 738, 744 (1967).  *See* City of Yonkers v. Otis Elevator Co., 844 F.2d 42, 49 (2d Cir.  1988) ("Yonkers contends that it only became clear that its fraud claims were groundless after discovery . . . . Yonkers should not have continued to press the fraud claims at that juncture, thus requiring Otis to move for summary judgment with respect to them").

If the question before me was whether Ms. Agola's failure to earlier discontinue or withdraw was objectively reasonable (as in <u>Sussman</u>), I would not hesitate to conclude that it was not. However, since the standard is subjective bad faith, I give her the benefit of the doubt by concluding that she did not finally determine that plaintiff's claims lacked merit until she reviewed the summary judgment motion in March 2012 - and therefore, that her failure to earlier discontinue or withdraw does not constitute subjective bad faith.

Unfortunately for Ms. Agola, her own words leave me with no such doubts as to the rest of her conduct.

### 2.      False/Misleading Submissions to the Court in Seeking Extensions

"Since the Circuit clarified the standard for court-initiated sanctions, district courts have found subjective bad faith in a variety of cases . . . [such as] lying to the magistrate judge". <u>In re Gushlak</u>, 2012 WL 2564523, *2 (E.D.N.Y. 2012). As Judge Larimer has recognized in sanctioning Ms. Agola in the past, "bad faith [is] inherent in counsel's attempt to [allege] facts . . . which she knew firsthand to be misleading at best and utterly untrue at worst". <u>Johnson ex rel. United States v. The University of Rochester Medical Center</u>, 715 F.Supp.2d 427, 430-31 (W.D.N.Y. 2010) (Larimer, J.), <u>aff'd</u>, 642 F.3d 121 (2d Cir. 2011). *See also* <u>Interstate Narrow Fabrics, Inc. v. Century USA, Inc.</u>, 2006 WL 435726, *6 (M.D.N.C. 2006) ("Intentional, or even reckless, misrepresentations to a court is bad faith behavior that the Court has a clear interest in deterring").

Ms. Agola now claims that her three consecutive requests for an adjournment of the deadline for responding to the summary judgment motion were "not intended as a 'pledge'

that there was a basis for opposition, but, rather . . . that sufficient time was needed to review the substantive issues". Agola Declaration [90], ¶17. She claims that she was merely "seeking an extension of time to review the motion for summary judgment" and, if necessary, "withdraw as [plaintiff's] counsel". Id., ¶37.

That is clearly *not* what she said at the time. Instead, on each occasion - December 5, 2011, January 4, 2012, and February 23, 2012 - she sought an "adjournment . . . to file and serve the Plaintiff's opposition to defendant's Motion for Summary Judgment" (Agola Declarations [42-1], ¶10; [45-1], ¶11; [48-1], ¶18), and argued that "the Court should . . . allow Plaintiff to submit his opposition to Defendant's Motion for Summary Judgment." Plaintiff's Memoranda of Law [42-2], p. 2; [45-2], p. 2; [48-2], pp. 2-3.

She justified those requests by swearing to me that "Plaintiff's opposition to defendant's Motion for Summary Judgment is substantive", and arguing that his "rights would be severely prejudiced" if his deadline for opposing the motion was not extended. Agola Declarations ([42-1], ¶¶7, 9;  [45-1], ¶¶8, 10; [48-1], ¶¶15, 17).[6]  The word "substantive" means "[h]aving a solid basis; not slight, weak, or transitory" (Oxford English Dictionary (Online Version 2012)), and is synonymous with "substantial". Roget's International Thesaurus §763.06 (6th Ed. 2001).

In her Objections to my June 13, 2012 Report and Recommendation, Ms. Agola admitted that she did not know whether plaintiff had a substantive basis for opposing the

---

[6]     The fact that Ms. Agola waited until the very last day of each deadline to seek an additional extension is also troubling, as she had no assurance that I would grant the extension even if opposing counsel consented. "The filing of a request for an extension on the final day of the time period . . . is evidence of being remiss in one's duties." Bruce v. County of Rensselaer 2003 WL 22436281, *2 (N.D.N.Y. 2003).

summary judgment motion when she sought the extensions, arguing that "it was reasonable . . . to request additional time to fully review the motion for summary judgment to make certain that the firm could . . . certify to the Court that there exists a material issue of fact for trial." Objections [83], p. 8. Since Ms. Agola did not know whether plaintiff had a substantive basis for opposing the motion, she defrauded the court by swearing that he did.  *See* DiRose v. PK Management Corp., 691 F.2d 628, 632 (2d Cir. 1982), cert. denied, 461 U.S. 915 (1983) ("a defendant may be guilty of fraudulent misrepresentation for making a false statement without knowing it to be false, if he made it recklessly with the pretense of knowledge that it was true when in fact he knew that he had no such knowledge"); In re LILCO Securities Litigation, 625 F.Supp. 1500, 1504 (E.D.N.Y. 1986) ("Fraud . . . means knowledge of the falsity of a representation or knowing that one does not have a basis for asserting the truth of a representation with the intention that another party rely on the representation").

Ms. Agola argues that she "did not mislead the Court in any material fashion, particularly . . . since [she] never advised the Court that she intended to put in an opposition to Defendant's motion for summary judgment". Agola Declaration [90], ¶35. In fact, that is *exactly* what she told me she intended to do - not just once, but on three separate occasions: "[i]n good faith, your Declarant anticipated filing and serving the Plaintiff's Opposition to Defendant's Motion for Summary Judgment on Monday, December 5, 2011" (Agola Declaration [42-1], ¶7); "[i]n good faith, your Declarant anticipated filing and serving the Plaintiff's Opposition to Defendant's Motion for Summary Judgment on January 4, 2012" (Agola Declaration [45-1], ¶8); "[i]n good faith, your Declarant anticipated filing and serving the Plaintiff's Opposition to

Defendant's Motion for Summary Judgment by February 23, 2012" (Agola Declaration [48-1], ¶15).

By signing these declarations, Ms. Agola certified pursuant to Rule 11(b)(1) and (2) that, to the best of her knowledge, "formed after an inquiry reasonable under the circumstances",[7] her assertion (that plaintiff had a "substantive" basis for opposing the motion) was "not being presented . . . [to] cause unnecessary delay", and was "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law".

Ms. Agola's suggestion that she "did not mislead the Court in any material fashion" (Agola Declaration [90], ¶35) is simply wrong. "[A] concealment or misrepresentation is material if it has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed." Kungys v. United States, 485 U.S. 759, 770 (1988). Ms. Agola's statements in seeking the extensions of her deadline for opposing the summary judgment were clearly "capable of influencing" my decision as to whether to grant those extensions. Since Rule 6(b) requires a party seeking an extension of a deadline to show "good cause" for the extension, she attempted to persuade me that plaintiff had a "substantive" (*i.e.*, solid or substantial) basis for opposing the summary judgment motion - for if he lacked such a basis, then there would be no reason to delay the inevitable dismissal of his claims by granting the extension. *See* 1 Moore's, §6.06[1][a] ("The court is expected to use its discretion to extend

---

[7]     "Reasonable inquiry means that the pleader must seek sufficient credible information, rather than proceeding on mere suspicions, opinions, or conclusions." Islamic Shura Council of Southern California v. F.B.I.  278 F.R.D. 538, 543 (C.D.Cal. 2011); Kendrick v. Zanides, 609 F.Supp. 1162, 1172 (N.D.Cal. 1985).

time periods in a manner that will 'secure the just, speedy, and inexpensive determination of every action and proceeding,' as stated by Rule 1. In order to secure the 'just, speedy, and inexpensive determination' of an action, a court might well deny a request for an extension of time").

Ms. Agola further argues that her "motions for an extension of time were fairly simple and unlikely to have caused any confusion or prejudice." Agola Declaration [90], ¶36. Lying to a court can never be treated as a "fairly simple" matter. "Our entire justice system is premised on the dependability and truthfulness of documents which are signed by members of the bar." In re Baycol Products Litigation, 2004 WL 1052968, *11 (D.Minn. 2004).

Therefore, "a district court may impose a punitive sanction for the filing of a paper that lacks factual foundation and is intended to mislead the Court and opposing parties, even if the paper does not significantly delay proceedings, because of the disrespect shown to judicial process." Mercury Service, Inc. v. Allied Bank of Texas, 117 F.R.D. 147, 156 (C.D.Cal. 1987), aff'd, 907 F.2d 154 (9th Cir. 1990).

### 3.    The March 28, 2012 E-Mail

The final area of concern identified in my Order to Show Cause ([89], ¶3) was Ms. Agola's "repeatedly stating that she could not oppose the [summary judgment] motion in good faith . . . while telling my law clerk in a March 28, 2012 e-mail that she would oppose the motion if the case did not settle, provided that she could obtain another extension". As previously discussed, in that e-mail Ms. Agola stated that "[i]f we cannot resolve this [the dispute over costs] by Friday, we will file a Rule 6 b motion to extend the time to respond. I am currently

preparing for a trial date certain of April 17 before Judge Siragusa and I will need time to complete my submission" ([75-3], p.11).

    The only reasonable interpretation of that e-mail is that even *after* she realized that she could in good faith not oppose the summary judgment motion, Ms. Agola fully intended to do so if she could not resolve the issue of costs. Her suggestion that the "response" referred to in her e-mail "would have been in the form of a motion to withdraw as counsel" (Agola Declaration [90], ¶25) is not the least bit persuasive. If she merely intended to file a motion to withdraw (which would require little more than a statement that she could not in good faith oppose the summary judgment motion),[8] why would she need several more weeks - until after her trial with Judge Siragusa - "to complete [her] submission"?

    In attempting to explain away this e-mail, Ms. Agola has made an already bad situation even worse. "Fraud can be proved by circumstantial evidence. Such evidence may include . . . implausible explanations of behavior." Schiff v. United States, 919 F.2d 830, 833 (2d Cir. 1990), cert. denied, 501 U.S. 1238 (1991). *See also* United States v. Villarreal 324 F.3d 319, 325 (5th Cir. 2003) ("implausible explanations have been recognized as evidence of guilty knowledge").

    For these reasons, I conclude Ms. Agola's repeated and blatant misrepresentations to this court were made in subjective bad faith, warranting the imposition of Rule 11 sanctions.

---

[8]   Indeed, she could not say more than that without jeopardizing plaintiff's interests.

**B.      What is an Appropriate Sanction?**

"The court has significant discretion in determining what sanctions, if any, should be imposed for a violation". 1993 Advisory Committee Notes to Rule 11.  Among the factors which may be considered in making that determination are "[w]hether the improper conduct was willful, or negligent; whether it was part of a pattern or activity, or an isolated event . . . whether the person has engaged in similar conduct in other litigation . . . [and] whether the responsible person is trained in the law". Id.

Ms. Agola is no neophyte to the practice of law - she has "experience as an 18 year veteran of handling discrimination cases". Agola Declaration [75], ¶29. During those 18 years, she has repeatedly been admonished and/or sanctioned for advancing unfounded positions and misleading the court. *See, e. g.*:

- - Geiger v. Town of Greece, 2008 WL 728471, *5 (W.D.N.Y. 2008) (Siragusa, J.) ("the Court finds that Plaintiff's counsel violated Rule 11(b)(2) & (3) by asserting and then pursuing a defamation claim that was clearly not warranted by the facts of this case, or by existing law or a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law");

- - Johnson, 715 F.Supp.2d at 430-31 (Larimer, J.) ("Given the bad faith inherent in counsel's attempt to place facts in a pleading which she knew firsthand to be misleading at best and utterly untrue at worst, and counsel's inexplicable refusal to withdraw the frivolous claims for nearly a year, even after their baselessness had been precisely identified and briefed by defendants, I find that an award of monetary sanctions is appropriate in this case");

- -  <u>Colombo v. East Irondequoit Central School</u>, 2010 WL 6004378, *10

(W.D.N.Y. 2010) (Siragusa, J.) ("the Court reminds Ms. Agola of her affirmative duty under Rule

11(b) with regard to factual representations made to the Court . . . . Factual misstatements are a

recurring problem with Ms. Agola's submissions to the Court");

- -  <u>Kleehammer v. Monroe County</u>, 743 F.Supp.2d 175, 188, 189 (W.D.N.Y.

2010) (Siragusa, J.) ("The Court repeats that Federal Rule of Civil Procedure 11 requires all

counsel, as officers of the court, to make only those claims that are supported by a good faith

factual basis . . . . The Court will not hesitate to consider sanctions if warranted");

- -  <u>Muhammad v. Wal-Mart Stores East, L.P.</u>  2012 WL 3201668, *11  (W.D.N.Y.

2012) (Siragusa, J.) ("Ms. Agola's conduct . . . is not atypical of her practice before this Court.

She has in the past pursued meritless claims, making baseless arguments to avoid summary

judgment");

- -  <u>In re Agola</u>  2012 WL 2025389, *7 (2d Cir. 2012) (Committee Report, quoting

letter from Judge Larimer: "Ms. Agola on more than one occasion demonstrated a disregard for

her obligations under Rule 11, with respect to both factual allegations and legal claims and

theories that she has made before this Court").

     These past monetary sanctions and admonitions have not dissuaded Ms. Agola

from making numerous misrepresentations to the court in this case, which I find to be at best

reckless, and more likely intentional. Therefore, in my view little purpose would be served by

imposing another monetary sanction at this time.

          "The current text of Rule 11 contemplates greater use of nonmonetary sanctions for

a violation of the signing requirements." 5A Wright, Miller, Kane, <u>Federal Practice & Procedure</u>

-16-

(Civil) §1336.3 (3d ed.). Such sanctions may include "suspension or disbarment from the practice of law". Id.; *see also* Donaldson v. Clark, 819 F.2d 1551, 1557 (11th Cir. 1987). Courts have "consistently frowned upon false submissions to a court and the sanction for engaging in such conduct has ranged from disbarment . . . to a short period of suspension . . . depending on the mitigating factors presented in the case." Matter of Jagiela, 217 A.D.2d 104, 108 (1st Dept. 1995).

See, *e. g*., In re Brenner, 44 A.D.3d 160, 163 (1st Dept. 2007) (imposing a six-month suspension from the practice of law for filing false affidavit in connection with *pro hac vice* application in federal court); Matter of Kleiman, 107 A.D.2d 241, 245 (1st Dept. 1985) ("Considering the respondent's continuous pattern of submitting false documents to the Supreme Court, we find the [disciplinary] Panel's recommendation of a two-year suspension to be inappropriate. In fact, these recurring evidences of lack of professional responsibility demonstrate that respondent is not fit to remain at the Bar") (imposing sanction of disbarment on appeal from order of suspension); Baycol Products, 2004 WL 1052968, *19 ("although Bayer does not seek sanctions against Lemon, the Court cannot ignore the fact that Lemon lied . . . under oath in her deposition. This conduct proves that Lemon does not posses the proper candor and honesty necessary to practice law in this jurisdiction . . . . Lemon is prohibited from practicing law in the United States District Court for the District of Minnesota").

Since Ms. Agola has demonstrated that lesser sanctions are ineffective, I conclude that the least severe sanction "reasonably necessary" to address her misconduct is suspension from practice before this court for a period of six months. Recognizing the hardship that such a sanction will cause, not only to Ms. Agola, but also to her clients and employees, I reach this conclusion

with considerable regret - but with the hope that she will finally realize that misrepresentations to this or any other court simply cannot be tolerated. *See* <u>United States v. Daugerdas</u>, ___F. Supp.2d___, 2012 WL 2149238, *1 (S.D.N.Y. 2012) ("attorneys, as officers of the court, owe an unflagging duty of candor to the tribunal. When these foundational duties are breached, the integrity of the judicial process is undermined").


## CONCLUSION

For these reasons, pursuant to Rule 11(c)(3) I recommend that Ms. Agola be sanctioned by suspension from practice before this court for a period of six months, commencing if and when this Report and Recommendation is adopted. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by September 24, 2012 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each

objection . . . supported by legal authority", and must include "a written statement either certifying

that the objections do not raise new legal/factual arguments, or identifying the new arguments and

explaining why they were not raised to the Magistrate Judge".  Failure to comply with these

provisions may result in the district judge's refusal to consider the objections.


Dated: September 6, 2012


/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge