UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAUL A. RANKIN,

                        Plaintiff,

v.

CITY OF NIAGARA FALLS,
DEPARTMENT OF PUBLIC WORKS,
JOHN CASO, Department Head,
in his Official and Individual Capacity,

                        Defendants.
_____

**REPORT AND RECOMMENDATION**

09-CV-00974(A)(M)

       This case has been referred to me by Hon. Richard J. Arcara to hear and report on all dispositive motions [6, 58].[1]  Plaintiff commenced this employment discrimination action through his counsel, Christina A. Agola, PLLC.  Complaint [1].  Before me is the motion of defendants City of Niagara Falls, Department of Public Works ("DPW") and John Caso for summary judgment [34].  Although no response to the motion was filed by plaintiff's counsel, the parties filed a stipulation of dismissal [51], and the case was closed by Judge Arcara [52].

       Thereafter, plaintiff filed a *pro se* motion to vacate the dismissal [53] and plaintiff's counsel cross-moved to withdraw [56].[2]  Both of these motions were granted [81, 87] and, notwithstanding Ms. Agola's failure to file a response to defendants' motion for summary judgment, by Text Order dated July 12, 2012 [88], I permitted plaintiff, proceeding *pro se*, to

---

[1]      Bracketed references are to the CM/ECF docket entries.

[2]      In connection with these motions and the proceedings that have emanated from them, Ms. Agola has expressed her views concerning the merit of plaintiff's claims and her ability to oppose defendants' summary judgment motion consistent with her Fed. R. Civ. P. ("Rule") 11 obligations.  I have not taken Ms. Agola's views into consideration in resolving this  motion.

submit a response to defendants' motion for summary judgment [92], and gave defendants the opportunity to reply [100-102]. Oral argument was held on October 5, 2012 [104]. For the following reasons, I recommend that the motion be granted.

## BACKGROUND

Plaintiff, an African American, commenced this action on November 10, 2009 against DPW and John Caso, DPW's Deputy Director, alleging racial discrimination (Complaint [1], First and Second Causes of Action) and retaliatory discharge (id., Third and Fourth Causes of Action), in violation of 42 U.S.C. §1981 and New York Human Rights Law ("NYSHRL"), NY Executive Law §§290, *et seq*.

On March 1, 2004, plaintiff began his employment with the DPW in a temporary capacity as a Maintenance Worker-2 ("MW-2"). Defendants' Statement of Undisputed Material Facts [34-1], ¶5. He then received a permanent position with the DPW on September 15, 2004, as a Motor Equipment Operator-3 ("MEO-3") (id., ¶6; Complaint [1], ¶9). Plaintiff was a member of the United Steel Workers of America, Local 9434-02 (the "Union"), and his employment was governed by a collective bargaining agreement ("CBA") between the Union and the City. Defendants' Statement of Undisputed Material Facts [34-1], ¶15.

Plaintiff missed work beginning on April 3, 2008 due to a work-related injury that he sustained on September 13, 2007 (id., ¶¶7-8; Ex. H; Complaint [1], ¶10). When plaintiff returned to work on April 9, 2008, he was placed on light duty as directed by his physician. Defendants' Statement of Undisputed Material Facts [34-1], ¶10. On light duty, plaintiff worked four hours a day cleaning the DPW's offices (id., Ex. H). Consistent with a May 29, 2008 note

from plaintiff's physician, he was released to full-time work on June 4, 2008, but remained on light duty and continued to perform his duties as a cleaner (id., ¶¶12-13). During the period plaintiff was on light duty, he maintained his position as a MEO-3, and received pay and benefits associated with that position (id., ¶14).

The City posted a Notice of Job Vacancy on July 2, 2008 for plaintiff's MEO-3 position (id., Ex. J; Complaint [1], ¶11). The typed Notice of Job Vacancy included a handwritten notation stating, "[i]ncumbent is on W/C position is temp". Defendants' Statement of Undisputed Facts [34-1], Ex. J. Bids were received for the position from two Caucasian DPW employees, Michael Boccanera and Brian Raymond (id.). The position of "MEO-3 Temporary" was awarded to Mr. Boccanera effective August 28, 2008 (id., Ex. K; Complaint [1], ¶12). Mr. Boccanera was previously a Motor Equipment Operator-2 ("MEO-2"). Defendants' Statement of Undisputed Material Facts [34-1], Ex. F, p. 65; Complaint [1], ¶13. Since the position awarded to Mr. Boccanera was temporary, plaintiff could have returned to his MEO-3 position if he had been cleared by a physician to do so. Defendants' Statement of Undisputed Material Facts, [34-1], ¶24.

Plaintiff alleges that he made a request for a light duty assignment on July 17, 2008, and that other similarly situated Caucasian employees had been granted light duty and transferred to other positions due to injury. Complaint [1], ¶¶15, 16. Plaintiff alleges that defendant Caso and Roy Harvey, President of the Union, gave him "an ultimatum" to "*go see his doctor and change his medical restrictions, or go back out on workers' compensation by July 23rd, 2008*" (id., ¶17 (emphasis in original)). Defendant Caso denies these allegations. Defendants' Statement of Undisputed Material Facts [34-1], Ex. C, pp. 67-68. According to

plaintiff, he "wanted to know if he could no longer do [his] job as an MEO3, where could he end up and what job could he get", and Mr. Harvey explained "that there is a posting procedure that takes place" (id., p. 66).

On July 17, 2008, the City posted a Notice of Job Vacancy for one permanent position as a MW-2 in the Public Works/Ramps Department (id., Ex. T). The posting indicated that "[p]reference will be given to employees in the Parks and Public Works Department - Ramps Division" (id.). A number of individuals bid for this job, including plaintiff and Arthur Curcione, Jr., who had a seniority date of April 20, 2006 and was in the "Parks/Small Parks" Department (id.). Although Mr. Curcione had less seniority than plaintiff, he was the successful bidder for the position (id., ¶59). When asked at his deposition whether despite his higher seniority, he "fell behind [Mr. Curcione] because of the division that [he was] in?", plaintiff answered "Correct" (id., Ex. B, p. 187). Likewise, when he was asked whether the selection of Mr. Curcione was "discriminatory" or "improper in any way", he responded, "No" (id.).

Pursuant to the City's Transitional Duty Program effective March 19, 2007 (id., Ex. I), an "employee is entitled to use up to 90 calendar days of Transitional Duty during a 365-day period. If recovery enabling full-duty status is not achieved within this time frame, the employee will be placed on Workers' Comp after the 90 days" (id.). Although plaintiff was advised that his 90-day period of transitional duty was set to expire on August 5, 2008, plaintiff signed a handwritten statement prepared by defendant Caso on July 23, 2008, stating that "at this

time [he] cannot do light duty" (id., Ex. Q).[3]   The DPW considered this a voluntary unilateral

removal from active duty (id., ¶¶50-51),[4] and plaintiff was placed on Workers' Compensation as

of that date (id., Ex. H, p. 2).

Plaintiff alleges that he requested Mr. Boccanera's MEO-2 job at the July 23,

2008 meeting.  Complaint [1], ¶21.  However, it was not until July 29, 2008, when plaintiff was

out of work on Workers' Compensation, that the City posted a Notice of Job Vacancy for Mr.

Boccanera's  MEO-2 position as a "Temporary Anticipated Vacancy".  Defendants' Statement of

Undisputed Material Facts [34-1], ¶54, Ex. R.  The only bid for this position was submitted by

Mr. Curcione (id., Ex. S).  Plaintiff alleges that he was not notified of this vacancy.  Complaint

[1], ¶26.  Mr. Curcione selected the MW-2 position (defendants' Statement of Undisputed

Material Facts [34-1],  Ex. U), and the City re-posted the MEO-2 position in an August 15, 2008

Notice of Job Vacancy (id., Ex. V).  The  Notice stated that it was to be posted from August 15,

2008 through August 21, 2008 (id.).

By letter dated August 25, 2008 to David Kinney, the Director of the Street

Cleaning Division of the DPW, and Joyce Serianni, the Human Resources Director, plaintiff

stated that he was "capable of working below [his] grade", but that he "had no clue or was

uninformed" about the MEO-2 position, and that when it was re-posted, he "once again . . . had

---

[3]     Plaintiff argues that he "retains no such authority to 'advise' Deputy Director of DPW
John Caso. Without an approved authorized doctor slip, Plaintiff must work." Annexed Plaintiff's
Response to Defendants' Local Rule 56(A)(1) Statement [92-2], ¶50.  However, the documents upon
which plaintiff relies (plaintiff's Exs. 3, 20, 30) do not support this allegation.

[4]     Plaintiff argues that it was "[i]mpossible for [him] to unilaterally remove[] himself from
active duty, when, Deputy Director of DPW John Caso, held and retains authority, is the author, writer,
and publisher of [the] note". Annexed Plaintiff's Response to Defendants' Local Rule 56(A)(1)
Statement [92-2], ¶51. However the document plaintiff relies upon (plaintiff's Ex. 3) does not support
this allegation.

no knowledge of this posting and vacancy" and "missed this valued opportunity" (id. Ex. X).

Therefore, he "asked to be allowed to bid on this vacancy and considered for this position" (id.).

However, according to Mr. Harvey, late bids cannot be considered pursuant to the CBA (id., Ex.

D, pp. 74-75). As the only timely bidder, the position was awarded to Brian Raymond (id., ¶65),

a Caucasian DPW employee (id., ¶76).

On August 12, 2008, Mr. Kinney wrote to plaintiff, requesting that he return his

11 pairs of uniform pants and 11 uniform shirts by August 22, 2008  (id., Ex. P).  Whereas

plaintiff's Complaint alleges that Mr. Kinney's letter "inferr[ed] that he was terminated from his

position with the City" (Complaint [1], ¶14), the letter expressly stated,  "When you return to

work, we will reissue these uniforms to you".  Defendants' Statement of Undisputed Material

Facts [34-1], Ex. P.  According to Mr. Kinney, the request for plaintiff to return his uniform was

based upon "[c]ost, money", since the City was paying a rental charge for plaintiff's uniforms

(id., ¶¶35-36).  The DPW has requested Caucasian employees return their uniforms for similar

reasons.  Kinney Declaration [38], ¶5, Ex. A.

While plaintiff was out on Workers' Compensation, the City sent  him a number

of letters concerning available positions open for bid, including:

- November 26, 2008 -  informing plaintiff that the DPW would be hiring
  "several [MEO-2 positions] on a temporary basis" and that this "temporary
  assignment . . . will in no way adversely impact your permanent status as a MEO-
  3."  In response, plaintiff checked the box  indicating that he was not interested in
  the position and stated, "Due to Charge of Discrimination by EEOC and your
  intentional acts not to accommodate Paul Rankin and refusing me my bidding
  rights, I don't trust working amongst yous [sic] for fear of retaliation".
  Defendants' Statement of Undisputed Material Facts [34-1], Ex. Y.

- December 10, 2008 - informing plaintiff of a temporary job opening for a
  Maintenance Worker-1 ("MW-1") and that this "temporary assignment . . . will

not adversely impact your permanent status as a MEO-3". Plaintiff's Ex. 44. In response, plaintiff indicated that he was not interested in the position "[d]ue to serious change in medical condition.  Also presently prescribed medication that affects my nervous system, Eg. Dizziness, lightheadedness, unusual drowsiness, headaches. Due to Syncope unresponsive at the time of episode". Id.

• December 31, 2008 - informing plaintiff of a permanent opening for a MW-2 position.  Defendants' Statement of Undisputed Material Facts [34-1], Ex. Y.

• March 10, 2009 - informing plaintiff of permanent openings for a MW-2 position and Cleaner position (id.).

• March 25, 2009 - informing plaintiff of a permanent opening for a MW-2 position (id.).

• April 3, 2009 - informing plaintiff of two permanent openings for a MW-2 position and one opening for a Cleaner position (id.).

Notwithstanding the individualized notifications he received for these vacancies, plaintiff did not bid on any of these positions (id., ¶85).  However, among the materials submitted by plaintiff in opposition to defendants' motion, he includes a job vacancy application dated February 27, 2009 for a position posted on February 26, 2009 for a MW-2 position.  Plaintiff's Ex. 7.

In response to a February 11, 2009 letter from plaintiff indicating that he was ready to return to work, plaintiff was directed to provide a note from his doctor, and if it "indicates that you are able to return to work full duty, with no restrictions, you may return to your position immediately".  Plaintiff's Ex. 5, p. 4.  However, there is no evidence in the record that plaintiff provided medical documentation supporting his ability to return to his MEO-3 position.

At plaintiff's request, he was placed on a leave of absence, without pay, for health reasons from December 1, 2008 through May 31, 2009.  Defendants' Statement of Undisputed

Material Facts [34-1], Ex. Z. By letter dated May 21, 2009, the City advised plaintiff that his second leave of absence was set to expire on May 31, 2009, and that if he was unable to return to work, he was to return the enclosed leave of absence form by May 30, 2009 (id.). When no response was received, a second leave of absence form was mailed to plaintiff by letter dated June 4, 2009, which stated that if no response was received by June 15, 2009, the City would assume that he was requesting no further leaves and would "proceed accordingly" (id.). A second letter was sent to plaintiff on August 27, 2009 indicating that the City had not received a response to their requests concerning the expiration of his leave of absence and that if he did not contact the City by August 31, 2009, he would be separated from service effective that date (id., Ex. AA). When plaintiff did not respond to this letter, he was deemed to have voluntarily resigned (id., Ex. BB).

## ANALYSIS

### A.    Summary Judgment Standard

"A party moving for summary judgment bears the burden of establishing that there exists no genuine issue of material fact warranting a trial . . . . In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." Gummo v. Village of Depew, N.Y., 75 F.3d 98, 107 (2d Cir.), cert. denied, 517 U.S. 1190 (1996); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

"Once that burden has been established, the burden then shifts to the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial . . . . To carry

this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor." Guerrero v. Lowe's Home Centers, Inc., 462 F. Supp.2d 399, 406 (W.D.N.Y. 2006) (Siragusa, J.), aff'd, 254 Fed. Appx. 865 (2d Cir. 2007) (Summary Order). *See also* Celotex, 477 U.S. at 322 (Fed. R. Civ. P. ("Rule") "56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

        I will address each of plaintiff's claims in light of that standard.

## B.    Racial Discrimination

        Plaintiff's claims of race-based discrimination claim brought under §1981 and NYSHRL are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). *See* Ruiz v. County of Rockland, 609 F.3d 486, 491 (2d Cir. 2010); Turley v. ISG Lackawanna, Inc., 803 F.Supp.2d 217, 234 (W.D.N.Y. 2011) (Skretny, J.). "Under this framework, a plaintiff must first establish a *prima facie* case of discrimination." Ruiz, 609 F.3d at 491. "In the context of an alleged discriminatory discharge, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." Id. at 491-92.

        "Once a plaintiff meets this initial burden, the burden then shifts to the defendant to offer a legitimate nondiscriminatory reason for the termination . . . . If defendant does so, the

burden returns to the plaintiff to show that the real reason for plaintiff's termination was his race". <u>Id.</u> at 492.

Evaluating each aspect of their alleged discriminatory conduct individually, defendants argue either that their conduct does not constitute an adverse employment action, or that they relied upon legitimate non-discriminatory reasons for their conduct, and that plaintiff has failed to put forth evidence of a discriminatory intent. Defendants' Memorandum of Law [40], pp. 9-27. They further argue that they are entitled to summary judgment on plaintiff's claims arising under the NYSHRL since plaintiff failed to file a notice of claim. <u>Id.</u>, pp. 38-39.

According to plaintiff's Complaint, defendants' alleged discriminatory conduct includes:

- The posting of plaintiff's position while he was on leave (Complaint [1], ¶¶11-13);

- The letter from Mr. Kinney requesting the return of his uniforms (<u>id.</u>, 14);

- The July 17, 2008 "ultimatum" (<u>id.</u>, ¶¶15-17);

- The failure to be transferred to Mr. Boccanera's MEO-2 position (<u>id.</u>, ¶¶ 21-23);

- The failure to be awarded the MW-2 position (<u>id</u>, ¶¶18-20);

- The failure to inform him of the July 29, 2008 and August 15, 2008 postings for Mr. Boccanera's former MEO-2 position (<u>id.</u>, ¶¶21, 26, 31); and

- The failure to act on an August 28, 2008 doctor's recommendation that plaintiff return to full-duty starting August 28, 2008 (<u>id.</u>, ¶¶33-35).

1.      **Defendants Have Offered Legitimate, Non–Discriminatory Reasons For Their Conduct**

Even assuming that plaintiff has established a *prima facie* case of discrimination, defendants have offered legitimate non-discriminatory reasons for their conduct regardless of whether their alleged acts of discriminatory conduct are analyzed individually or collectively, culminating with plaintiff's termination.

a.      **The Posting of Plaintiff's Position**

The uncontroverted evidence establishes that while plaintiff remained on light duty, his MEO-3 job was posted as a *temporary* position, and was filled by Mr. Boccanera on a *temporary* basis, which did not affect plaintiff's right to return to his position if he was physically able to do so. Defendants' Statement of Undisputed Material Facts [34-1], Ex. F, pp. 63-64. Plaintiff was repeatedly advised that if he could return to work without restrictions, he could return to his MEO-3 position. Plaintiff's Ex. 5, p. 4. However, there is no evidence in the record that this medical documentation was provided.

b.      **Request to Return His Uniforms**

Plaintiff's claim that Mr. Kinney's August 12, 2008 letter requesting the return of his uniforms "inferr[ed] that he was terminated from his position" (Complaint [1], ¶14), is belied by the plain language of the letter, which stated that "[w]hen [he] return[ed] to work", the uniforms would be reissued. Defendants' Statement of Undisputed Material Facts [34-1], Ex. P. It is also uncontroverted that this request was prompted by cost concerns, due to the fact that the City rented the uniforms, which were not being used by plaintiff while on Workers'

Compensation (id., ¶¶35-36), and that similar requests have been made to Caucasian employees to return their uniforms. Kinney Declaration [38], ¶5, Ex. A.

### c. The July 17, 2008 "Ultimatum"

It is undisputed that the City had a Transitional Duty Program during the relevant time period (Defendants' Statement of Undisputed Material Facts [34-1], Ex. I), entitling an employee to up to 90 calendar days of Transitional Duty during a 365-day period, and that "[i]f recovery enabling full-duty status is not achieved within this time frame, the employee will be placed on Workers' Comp after the 90 days" (id.). Although Mr. Harvey did not recall the July 17, 2008 conversation that allegedly occurred with, plaintiff and Mr. Caso, he nevertheless testified that it would be the "city norm" to advise an employee that in the absence of getting their medical restrictions changed that they would have to go out on Workers' Compensation at the end of the 90-day transitional duty period. Defendants' Statement of Undisputed Material Facts [34-1], Ex. D, p. 33.

### d. Failure to be Transferred into Mr. Boccanera's MEO-2 Position

While plaintiff alleges that he requested to be considered for Mr. Boccanera's MEO-2 position (Complaint [1], ¶21) and suggests that it should have been awarded to him (id., ¶22), it is undisputed that he failed to bid for this position. Schedule D of the CBA, governing Posting Procedures, indicates that "[n]otification of job vacancy *shall* be posted by the Personnel Office" and that "[a]pplications for said vacancies *must* be made on a form supplied by the Personnel Office". Defendants' Statement of Undisputed Material Facts [34-1], Ex. L, pp. 7, 37-

38 (emphasis added).  Plaintiff fails to cite to any evidence of an informal transfer policy that would have permitted his transfer to Mr. Boccanera's position on July 23, 2008, a date before it was posted.  Moreover, even if it was permissible for the City to consider his July 23, 2008 request for Mr. Boccanera's MEO-2 position, his July 23, 2008 signed statement that he "cannot do light duty" undermined his ability to fill that position. Defendants' Statement of Undisputed Material Facts [34-1], Ex. Q.

### e. Maintenance Worker-2 Position to Mr. Curcione

Fatal to plaintiff's reliance on the MW-2 position being awarded to Mr. Curcione is  plaintiff's own deposition testimony, wherein he conceded that there was nothing discriminatory or improper with Mr. Curcione's selection.  Defendants' Statement of Undisputed Material Facts [34-1], Ex. B, p. 187.

### f. Failure to Inform Plaintiff of Available Positions

Plaintiff alleges that "[d]efendants used non-notification and untimely to discriminate and retaliate against [him]".  Annexed Plaintiff's Response to Defendants' Local Rule 56(A)(1) Statement [92-2], p. 4. Defendants respond that plaintiff was not entitled to any individualized notice of posted vacancies since the CBA "contains no such provision". Defendants' Reply Memorandum of Law [102], p. 13. I agree with defendants.  While defendants did provide individualized notice to plaintiff from November 2008 to April 2009 of vacant positions (defendants' Statement of Undisputed Material Facts [34-1], Ex. Y), the CBA, including Schedule D, governing Posting Procedures, does not indicate that any individualized

notice was mandated.  Defendants' Statement of Undisputed Material Facts [34-1], Ex. L, pp. 7, 37.

### g.     Ability to Return to Full Duty on August 28, 2008

While plaintiff alleges that he was able to return to full duty on August 28, 2008, this is belied by his doctor's report, which indicated that he "cannot operate sweeper for 4 months". Plaintiff's Ex. 36.  This restriction was continued in a March 2, 2009 note by his physician. Plaintiff's Ex. 11.

There is also no evidence in the record that he ever provided proper medical documentation supporting his ability to return to his MEO-3 position.  In response to the City's December 10, 2008 posting for a MW-1 position, he responded that he was not interested in the position "[d]ue to serious change in medical condition.  Also presently prescribed medication that affects my nervous system, Eg. Dizziness, lightheadedness, unusual drowsiness, headaches. Due to Syncope unresponsive at the time of episode".  Plaintiff's Ex. 44.

Consistent with plaintiff's self-described limitations, his physician also completed a certification of medical care dated March 2, 2009 indicating that plaintiff was "totally incapacitated" from December 1, 2012 to February 28, 2009. Plaintiff's Ex. 11.[5]  Consequently, it is not surprising that when plaintiff  informed the City on February 11, 2009 that he was ready to return to work, Ms. Serianni responded on February 26, 2009, stating:  "Please provide us with a note from your doctor.  If your physician indicates that you are able to return to work full duty, with no restrictions, you may return to your position immediately." Plaintiff's Ex. 5.

---

[5]     It is not clear when this was submitted to the City.

### h.    Newly Raised Allegations

In opposition to defendants' motion, plaintiff relies upon a February 26, 2009 posting for a MW-2 position (plaintiff's Ex. 6) and his Job Vacancy Application dated February 27, 2009 (id., Ex. 7).  He alleges that "[d]efendants did not even reply to [this] job bid". Plaintiff's Memorandum of Law [92-3], p. 4. Plaintiff filed a grievance report concerning this failure, but since it was not filed "on the agreed upon form and . . . was not filed with the knowledge or approval of his Union", the City and Union did not take any action on it. Plaintiff's Ex. 12.

Although defendants fail to address these allegations in their reply papers, plaintiff conceded at oral argument that this incident was not alleged in the Complaint.  "It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment." Brandon v. City of New York,  705 F.Supp.2d 261, 278 (S.D.N.Y. 2010). Therefore, I will not consider these allegations. *See* Lyman v. CSX Transportation, Inc., 364 Fed.Appx. 699, 702 (2d Cir. 2010) (Summary Order) ("we cannot conclude that the district court abused its discretion in failing to consider plaintiff's new theories of liability"); Fullwood v. Association for the Help of Retarded Children, Inc.,  2010 WL 3910429, *7 (S.D.N.Y. 2010).


### 2.    Plaintiff Has Failed to Rebut Defendants' Legitimate, Non–Discriminatory Reasons

"[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated". Reeves v. Sanderson Plumbing Products, Inc., 530 U.S.

133, 148 (2000). Nevertheless, "[t]he creation of a genuine issue of fact as to pretext is not, without more, sufficient to rebut a defendant's legitimate non-discriminatory reason; rather, '[t]here must also be evidence that would permit a rational factfinder to infer that the discharge was actually motivated, in whole or in part, by discrimination on the basis of [the protected trait].'" Riley v. HSBC USA, Inc., 784 F.Supp.2d 181, 202 (W.D.N.Y. 2011) (Skretny, J./Foschio, M.J.) (*quoting* Grady v. Affiliated Central, Inc., 130 F.3d 553, 561 (2d Cir. 1997)).

Among the materials plaintiff submitted in opposition to defendants' motion is an Assurance of Discontinuance between the City and the New York State Attorney General on November 17, 2009, arising from complaints that the City "engaged in and/or condoned discrimination and harassment by its agents and employees". Plaintiff's Ex. 48, p. 1. An investigation conducted by the Attorney General determined that the City's policies were "inadequate to ensure a workplace free from discrimination, harassment and retaliation". Id., p. 2, ¶4. The Assurance of Discontinuance was reached without the City "admitting or denying [these] findings". Id., p. 2.

While the Assurance of Discontinuance may establish that discrimination was occurring at some levels and areas of City employment, plaintiff has failed to offer any evidence that the conduct he experienced was actually motivated, in whole or in part, by racial discrimination. *See* Riley, 784 F.Supp.2d at 202. He has produced no evidence to establish that defendants' proffered explanations for their conduct towards him were false, much less that they were motivated by his race. In fact, while plaintiff alleges that "defendants did not allow [him] to return to work with doctor restrictions" (plaintiff's Memorandum of Law [92-3], p. 4), defendants' conduct evidences the contrary. Notably, from November 2008 through April 2009

(Defendants' Statement of Undisputed Material Facts [34-1], Ex. Y), the City advised him of a number of job vacancies. Likewise, when the City learned that his Workers' Compensation had ceased, it informed him by letter that "if you are able to return to work, please notify us immediately". Plaintiff's Ex. 5. Even when plaintiff's leave of absence was set to expire, the City provided him with repeated notices and opportunities to extend it in order to prevent his voluntary resignation, which he ignored.

While plaintiff alleges that the other similarly situated Caucasian employees were treated differently from him insofar as they were able to remain on light duty (Complaint [1], ¶¶41-47), these allegations of disparate treatment, without evidentiary support, are insufficient to either establish a *prima facie* case of discrimination or to rebut defendants' legitimate non-discriminatory reasons for their conduct. *See* Harkola v. Energy East, 2011 WL 3476265, *8 -9 (W.D.N.Y. 2011) (Telesca, J.) ("To establish a *prima facie* case based on disparate treatment, a plaintiff *must bring forth some evidence* that other similarly situated employees who do not belong to his protected class were terminated or did not suffer an adverse employment action for the same reasons as the plaintiff" (emphasis added)).

Plaintiff's repeated allegations that the City and his former attorney "intentionally withheld [information] from the eyes of justice" are not sufficient to create a triable issue of fact. Even if I were to deem plaintiff's allegations that discovery was withheld by the City and his former counsel a Rule 56(d) application to conduct discovery necessary to oppose defendants' motion for summary judgment, he has not demonstrated that the additional discovery is "essential to justify [his] opposition". Rule 56(d).

The only discovery plaintiff specifically identifies as being withheld is Hugh Leftwich's statement, which was obtained by his counsel, but not provided to him. Plaintiff's Memorandum of Law [92-3], p. 6. It appears that plaintiff's former counsel elected not to use Mr. Leftwich's Affidavit when defendants' counsel opposed its use as being a violation of a settlement Mr. Leftwich entered into with the City. Plaintiff's Ex. 67.[6] Although plaintiff seeks to revisit his former attorney's decision not to challenge defendants' opposition to the use of Mr. Leftwich's Affidavit or to seek to compel such testimony, "[n]ormally, the conduct of an attorney is imputed to his client, for allowing a party to evade the consequences of the acts or omissions of his freely selected agent would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent." S.E.C. v. McNulty, 137 F.3d 732, 739 (2d Cir.), cert. denied, 525 U.S. 931 (1998).

Plaintiff provides no illumination as to what may have been contained in Mr. Leftwich's Affidavit, let alone good cause for reopening discovery to obtain this affidavit or Mr. Leftwich's testimony. See Keystone Manufacturing Co., Inc. v. Jaccard Corp., 2007 WL 4264609, *3 (W.D.N.Y. 2007) (Skretny, J.) ("Defendants are bound by the discovery obtained by Lipsitz Green, who they retained for more than 4 years without complaint. Although Defendants may be dissatisfied with Lipsitz Green's efforts, they have not demonstrated good cause for reopening discovery, and indeed, Plaintiff would be prejudiced").

Plaintiff's failure to produce "any evidence, other than conclusory statements unsupported by the record, to rebut the legitimate, nondiscriminatory reasons offered by [the

---

[6] As best I can discern from the record before me, Mr. Leftwich was plaintiff's co-worker. Mr. Harvey testified that he asked Mr. Leftwich to inform plaintiff of the August 15, 2008 posting for the MEO-2 position. Defendants' Statement of Undisputed Material Facts [34-1], Ex. D, pp. 73-74.

defendants], let alone evidence that could reasonably support a verdict in their favor" is insufficient to defeat summary judgment. Farias v. Instructional Systems, Inc., 259 F.3d 91, 99 (2d Cir. 2001). Therefore, I recommend that his racial discrimination claims be dismissed.


**B. Retaliation**

Plaintiff's claim of retaliation claim brought under § 1981 and the NYSHRL are also analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green. *See* Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) ("Retaliation claims made under 42 U.S.C. §1981 . . . are evaluated using a three-step burden-shifting analysis"). "[I]n order to demonstrate a prima facie claim of retaliation, plaintiff must demonstrate that: (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action, and (4) there was a causal connection between the protected activity and the adverse employment action." Richardson v. City of Niagara Falls, New York, 2012 WL 75771, *6 (W.D.N.Y. 2012) (Curtin, J.).

Plaintiff alleges that he "complained in writing to Human Resources on August 25, 2008 that [he] was being denied a position and that Caucasian employees were able to bid on and apply for positions that plaintiff was not able to bid on, but no remedial action was taken". Complaint [1], ¶48. He alleges that "days later a Caucasian employee admitted to hanging a sign over the water fountain that read 'whites only'", and that he "was terminated six days later on August 31, 2009" (id., ¶¶49-50). In response, defendants argue that plaintiff cannot establish a *prima facie* case of retaliation since his August 25, 2008 letter was not a protected activity and

there was no casual connection between his separation from service and the August 25, 2008 letter.[7]  I agree with defendants.

       **1.**       **Plaintiff's August 25, 2008 Letter Did Not Constitute a Protected Activity**

"Mere complaints of  unfair treatment by an individual are not protected speech . . . .  The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally . . . . In addition, a plaintiff's employer must have understood, or been able to understand, that plaintiff's opposition was directed at conduct prohibited by Title VII." Filippi v. Elmont Union Free School District Board of Education, 2012 WL 4483046, *16-17 (E.D.N.Y. 2012).  Plaintiff's August 25, 2008 letter contains no reference to discrimination because of his race.  Therefore, I conclude that plaintiff failed to establish that this constituted a protected activity.

_____

[7]      Plaintiff alleges in opposition to defendants' motion that "[o]n July 30th 2008, [he] was present at a public meeting . . . [and] complained about the fact that his job was posted, given to a less qualified white male, and that he was not offered another position". Plaintiff's Response to Defendants' Local Rule 56(a)(1) Statement [92-1], p. 39, ¶¶41-42. However, this was not alleged in the Complaint, much less as a basis for his retaliation claim. Since the protected activity alleged in the Complaint is expressly limited to the August 25, 2008 letter (Complaint [1], ¶48), any retaliation claims arising from the July 30, 2008 meeting will be disregarded. Compare with Leahy v. Anderson Crenshaw & Associates, LLC., 2010 WL 1459197, *4 (N.D.Tex. 2010) ("Defendants argue that Leahy is bound by her pleadings, which allegedly lock her into the position that the only 'protected activity' she claims was the actual filing of her complaint with the DOL. The court rejects this argument because, drawing a reasonable inference from the plain language of her complaint, it is clear that Leahy intended the description of her protected activities to include not just the filing of her complaint with the DOL but also her informal complaints").

**2. Plaintiff failed to establish a Causal Connection between his Letter and his Termination**

"Proof of such causation may be demonstrated either indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Barkley v. Penn Yan Central School District, 442 Fed.Appx. 581, 584 (2d Cir. 2011) (Summary Order).

Significantly, plaintiff's claim that he was terminated "*six days*" after his August 25, 2008 letter is erroneous. Complaint [1], ¶50 (emphasis added). In actuality, his termination occurred *over one year* later on August 31, 2009, which is insufficient to establish that it followed closely to his August 25, 2008 letter. *See* Barkley, 442 Fed. Appx. at 584-585 (finding that an 11-month lapse was insufficient to establish causation). Plaintiff has also failed to put forth any direct or indirect evidence establishing a causal connection. Therefore, I conclude that plaintiff has failed to establish a *prima facie* case of retaliation, and recommend that this claim be dismissed.

**CONCLUSION**

For the following reasons, I recommend that defendants' motion be granted. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by April 26, 2013 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial

review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.


Dated:   April 9, 2013                              /s/ Jeremiah J. McCarthy_____
                                                    JEREMIAH J. MCCARTHY
                                                    United States Magistrate Judge