UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════════

PAUL A. RANKIN,

                              Plaintiff,

         v.                                          **DECISION AND ORDER**
                                                     09-CV-974-A

CITY OF NIAGARA FALLS,
et al.,

                              Defendants.

═══════════════════════════════════════

        This employment discrimination case is before the Court to determine whether

attorney Christina A. Agola should be sanctioned under Rule 11(c)(3) of the Federal

Rules of Civil Procedure for making misleading representations to a Magistrate

Judge.  The circumstances are unlike any that have arisen during my nearly 25

years as a United States District Court Judge.

        In connection with an earlier Public Reprimand by the United States Court of

Appeals for the Second Circuit, Agola's professional conduct as an attorney is being

closely monitored by the Court of Appeals.  *In re Agola,* No. 10-90061-am, 2012 WL

2025389 (2d Cir. June 6, 2012).  Agola faces suspension from practice, without an

evidentiary hearing, if it appears she is not likely to meet her future professional

obligations.  *Id.* at *1, 15-16.  In this case, the Court finds that Agola, in spite of her

precarious professional standing, made misleading representations to a Magistrate

Judge in subjective bad faith.

## INTRODUCTION

Christina A. Agola objects to a Report and Recommendation of Magistrate Judge Jeremiah J. McCarthy issued September 6, 2012.  The Magistrate Judge recommended that Agola be sanctioned on the Court's own initiative under Fed. R. Civ. P. 11(c)(3) for making misleading representations in subjective bad faith in support of motions for extensions of time to respond to a summary judgment motion. Because previous warnings and monetary sanctions had failed to deter Agola from this bad faith conduct, the Magistrate Judge recommended a six-month suspension from practice in the United States District Court for the Western District of New York.

In considering whether to impose Fed. R. Civ. P. 11(c)(3) sanctions upon Agola, and the proper sanctions to impose, this Court has relied upon the discussion of matters addressed by the Second Circuit in its June 6, 2012 Public Reprimand of Agola, *In re Agola*, 2012 WL 2025389 (2d Cir. June 6, 2012), and the accompanying Report and Recommendation of the Court of Appeals' Committee on Admissions and Grievances, filed in December 2011.  *Id.*, 2012 WL 2025389 *5-16 (App. 2).[1] The Court has not reviewed Agola's complete history of monetary sanctions, reprimands, and warnings by other Judges in the Western District of New York.

Agola testified during an evidentiary hearing before the Magistrate Judge on May 23, 2012.  The Magistrate Judge also received declarations of Agola's made under penalty of perjury.  The Court has given due weight to the credibility

---

[1]  Agola waived objection to that Report and Recommendation.  *In re Agola*, 2012 WL 2025389 *1.

determinations of the Magistrate Judge.  Dkt. No. 95; *see In re Payne,* 707 F.3d 195, 201-02 (2d Cir. 2013) (citing cases); Fed. R. Civ. P. 72(b) *and* 28 U.S.C. 636(b) (*de novo* and clear error review).

The Court heard oral argument on Agola's objections to Magistrate Judge McCarthy's Report and Recommendation on December 11, 2012.  Separate counsel appeared on Agola's behalf.  No additional testimony was taken, and Agola submitted no additional declarations or other evidentiary material.

Upon review of Magistrate Judge McCarthy's Report and Recommendation, the Court concludes Agola made misleading representations in support of motions for extensions of time to respond to a summary judgment motion.  In three declarations made under penalty of perjury in support of successive motions for extensions of time, Agola represented that she had, in good faith, anticipated timely filing substantive opposition to the summary judgment motion.  However, the facts show that Agola believed she might never file opposition to the summary judgment motion, and knew that she was not close to doing so.  Agola had not yet "substantively review[ed]" the summary judgment "motion and related record" of more than 250 pages. Dkt. No. 90, p. 4, ¶ 11.  She had serious doubts whether there was legally-sufficient evidence to oppose the motion, and she was afraid she would be sanctioned again if she opposed the motion.  Agola misled the Magistrate Judge as to her diligence to justify her requests for extensions of time.

Determining whether to impose sanctions is "one of the most difficult and unenviable tasks for a court." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194

F.3d 323, 341 (2d Cir. 1999).  After careful and deliberate consideration, the Court is left with the firm conviction that Agola's misleading representations to the Magistrate Judge that she had substantive opposition to the summary judgment motion were a ploy to increase the chances she would receive the extensions of time she requested.  Agola intended to interfere with the Magistrate Judge's sound exercise of his scheduling discretion under Fed. R. Civ. P. 6(b).  The Court therefore finds Agola made misleading representations for an improper purpose in subjective bad faith.

In light of the Court's factual findings and conclusions of law, the Court will order Agola to pay three monetary sanctions totaling $3,000 to the Clerk of the Court pursuant to Fed. R. Civ. P. 11 for intentionally misleading the Magistrate Judge.  In addition, to further deter Agola from similar future misconduct, and to deter any attorney who might seek to mislead a court for a similar improper purpose, the Court will also reprimand Agola.

Although the Court does not adopt the Magistrate Judge's recommendation to suspend Agola from practice in the United States District Court for the Western District of New York, I strongly agree with the Magistrate Judge that Agola's violations of Fed. R. Civ. P. 11 and her professional misconduct must stop.  I conclude below that the Western District of New York should consider whether steps within the Court's inherent power are necessary to protect other litigants, Agola's clients, other attorneys, and the administration of justice.  *See In re Jaffe*, 585 F.3d 118, 121 (2d Cir. 2009) (quoted in *In re Agola*, 2012 WL 2025389, *1 n.2).  I

therefore refer Agola to all the Judges of the District for consideration of

supplementary discipline or other corrective action.  Whether additional action is

necessary is a question best addressed by all the Judges of the District after any

further investigation and proceedings the Judges deem appropriate.

## BACKGROUND

Christina A. Agola is an experienced attorney who primarily represents

persons claiming employment discrimination or civil rights violations.  She claims an

intense personal pride in being sensitive to the needs of her clients and in

advocating for their rights.  *See e.g.*, Dkt. No. 105, p. 15-17.  However, Agola has

had serious problems  "fully respect[ing] her professional obligations to her clients

and the courts."  *In re Agola*, 2012 WL 2025389 *14 (2d Cir. June 6, 2012) (App. 2).

For at least the last few years, Agola has been facing sanctions or

professional discipline in the United States District Court for the Western District of

New York or the Second Circuit Court of Appeals more or less continuously.  *See In*

*re Agola*, 2012 WL 2025389 at *3-4, 7-9, 12-14.  She has attributed recurring

deficiencies in her professional conduct to having taken on too many clients and has

blamed some of her misconduct on practice-management problems.  *Id.* at *11-13.

Agola has claimed before that she has taken to heart as  "wake-up calls" the

pointed and harsh warnings, monetary sanctions, and professional discipline she

has received.  *In re Agola*, 2012 WL 2025389 at *12*, 14; *see* Dkt. No. 105, p. 17.

She has claimed to have  "made significant changes in her practice in order to avoid

similar issues arising."  *Id* at *2.  She has claimed that she  "gets it."  *Id.* at *14.

5

The Public Reprimand of Agola by the Second Circuit Court of Appeals was primarily based upon its finding that she had failed to comply with scheduling orders in more than one-third of the matters she handled there. *In re Agola*, 2012 WL 2025389 (2d Cir. June 6, 2012). As part of the Court of Appeals' professional discipline of Agola, her conduct in other tribunals is being closely monitored for a term of three years to assess whether she is able to meet her professional obligations. *In re Agola*, 2012 WL 2025389 *1 n.2 (three-year term began Nov. 1, 2011). Agola is required to report to the Court of Appeals any instance in any court or administrative tribunal within the Court of Appeals' jurisdiction when:

> (1) a submission is not filed or is filed out of time; (2) an application is made for permission to make a late filing only after the due date has passed . . . [; and,] (3) any criticism of her law practice, her briefing, or her representation of her clients [is stated] in any written order or oral pronouncement of any court or other tribunal.

*Id.* at *1, 15. Agola has been notified that if her conduct in any tribunal within the Court of Appeals' jurisdiction shows she may fail to meet her future professional obligations to the Court of Appeals, she may be suspended from practice in the Court of Appeals without an evidentiary hearing. *Id.* at *1, 15-16.

If Agola is even temporarily suspended from practice by the Court of Appeals, she is likely to incur reciprocal professional discipline in other jurisdictions that will prohibit her from practicing law. L. R. Civ. P. 83.3(d); 22 N.Y. Comp. Codes R. & Regs., tit. 22 § 1022.22; *see e.g.*, *Matter of Agola,* 99 A.D.3d. 251, 252 (4th Dept. 2012) (reciprocal censure). Agola is aware that if the Western District of New York

suspends her from practice, she is likely to incur reciprocal suspensions from the practice of law in other jurisdictions.  *See e.g.*, Dkt. No. 105, p. 17.

In spite of Agola's precarious status as an attorney, or perhaps because of it, she continues to falsely deny making misleading representations in this case for an improper purpose.  She disputes her bad faith with equivocation about her representations.  She insists only higher purposes motivated her.  But by trying to evade responsibility for her misconduct in this case, Agola may have created a situation that merits more serious supplementary sanctions or corrective actions.

## SUMMARY

In April of 2012, a dispute erupted between the plaintiff, Paul A. Rankin, and his attorney, Christina A. Agola, over whether Agola had filed a Stipulation of Discontinuance to end the case without plaintiff Rankin's authorization and despite plaintiff's desire to proceed to trial.  The attorney-client dispute was referred to Magistrate Judge McCarthy, who was familiar with the case.  The attorney-client dispute was resolved after a hearing during which both Agola and plaintiff, who was then proceeding *pro se*, testified under oath before the Magistrate Judge about the dispute.  Agola testified, with leave of the Magistrate Judge, about privileged attorney-client communications and her opinions on the merits of plaintiff's case.  After the hearing, the Court adopted a Report and Recommendation to vacate the Stipulation of Discontinuance on the ground Agola had not been authorized by plaintiff to discontinue the action.

Agola's testimony during the May 23, 2012 hearing, together with declarations

7

she made under penalty of perjury, described proof problems with plaintiff Rankin's case, some of which Agola had recognized and discussed with plaintiff in 2009, before the action was filed.  For example, Agola stressed that she understood before the action was filed in 2009 that plaintiff Rankin had been offered other employment by defendant City of Niagara Falls nine times, and that plaintiff had declined all nine offers.  Agola also described very difficult consultations with plaintiff and ethical concerns she entertained due to statements plaintiff had made that were damaging to his case.

Portions of Agola's declarations and testimony during the hearing on the unexpected and bitter attorney-client dispute over the Stipulation of Discontinuance contradicted earlier representations she had made to the Magistrate Judge.  Starting in December 2011, Agola was granted three extensions of time — totaling more than three and a half months — to respond to a summary judgment motion, after she declared, under penalty of perjury, that she had other, urgent professional commitments and needed additional time to oppose the motion.  In each of the three instances, Agola specifically represented that she had,  "in good faith, . . . anticipated filing and serving"  substantive opposition to the motion for summary judgment  "as per Fed. Civ. P. 56"  on the due dates of the opposition to the motion, but that she needed additional time because of  "the extraordinary circumstances"  of conflicting, unrelated commitments in her caseload.  Dkt. Nos. 42-1; 45-1; 48-1.

After Agola filed the Stipulation of Discontinuance instead of substantive

opposition to the summary judgment motion, and the attorney-client dispute over the Stipulation erupted, Agola explained to the Magistrate Judge that she had sought the extensions of time to oppose the motion because she needed more time to resolve long-standing and serious doubts whether there was legally-sufficient evidence to proceed with plaintiff Rankin's case on the merits.  Agola explained she had been worried she would be sanctioned again if she filed spurious opposition to the summary judgment motion, and that she needed more time to be sure she was not going to violate Fed. R. Civ. P. 11.

Agola admits she was so busy she did not review defendants' November 4, 2011 summary judgment motion and related record until sometime in March of 2012, well after all three of the motions she filed for extensions of time had been granted by the Magistrate Judge.  She admits she did not speak to plaintiff Rankin about the problematic issues discussed above until March 23, 2012.  That was approximately three and a half months after she first represented to the Magistrate Judge, on the due date of opposition to the summary judgment motion, that she had  "[i]n good faith, . . . anticipated filing and serving the Plaintiff's Opposition to Defendant[s'] Motion for Summary Judgment on Monday, December 5, 2011."  Dkt. No. 42-1, ¶ 7; *see* 48-1, pp.3-4, ¶¶ 15, 17 ("The Plaintiff's opposition to defendant[s'] Motion for Summary Judgment is substantive and your Declarant fears the Plaintiff's rights would be severely prejudiced . . ."(filed February 23, 2012)).

Agola's admissions establish that she was well aware that she was much further behind in assessing the proof problems in plaintiff Rankin's case and

resolving her worries of being sanctioned again — let alone actually being close to

filing and serving substantive opposition to the summary judgment motion on the

due dates — than she represented on December 5, 2011, January 4, 2012, and

February 23, 2012.  Agola's representations under oath that she had substantive

opposition to the summary judgment motion lacked a colorable basis in fact, and she

made the representations knowing they were misleading as to her diligence each of

the three times she made them.

Agola nevertheless insists that  "it was never [her] intention to confuse or

mislead the Court."  Dkt. No. 105, p. 9.  She argues that her representations that she

had, in good faith, anticipated filing and serving substantive opposition to the

summary judgment motion on the due dates were not misleading because she

meant only to convey that she had  "substantive issues"  and needed additional time

to preserve  "potential"  opposition to the motion.  *Id.* at p. 8.

However, clear and convincing evidence establishes Agola intended to

represent that she believed she had substantive opposition to the summary

judgment motion.  Agola made the misleading representations to bolster the

chances she would receive the extensions of time she requested.  Agola intended

her misleading representations to interfere with the Magistrate Judge's sound

exercise of his scheduling discretion under Fed. R. Civ. P. 6(b).  Because Agola

misled the Magistrate Judge for that improper purpose, the Court finds below that

she misled the Magistrate Judge in subjective bad faith and that Fed. R. Civ. P.

11(c)(3) sanctions lie.

A court may, but is not required to, impose sanctions pursuant to Fed. R. Civ. P. 11 when grounds for sanctions are found.  *Ipcon Collections, LLC v. Costco Wholesale Corp.*, 689 F.3d 58, 63 (2d Cir. 2012).  Whether an attorney should be sanctioned upon a court's own initiative under Fed. R. Civ. P. 11(c)(3) for acting in subjective bad faith, and if so, what sanctions should be imposed, are nearly always difficult determinations requiring careful deliberation.  *ATSI Commc'ns, Inc. v. Sharr Fund, Ltd.*, 579 F.3d 143, 150-51 (2d Cir. 2009) (quoting and discussing *In re Pennie & Edmonds LLP,* 323 F.3d 86  (2d Cir. 2003)).

Attorneys must handle momentous concerns of their clients with discretion and zeal, despite the chaotic and tentative circumstances that sometimes arise in the daily practice of law.  Professional obligations of an attorney to use exacting care, to be zealous, and to act with reasonable diligence can be sorely tested when conflicting and sometimes irreconcilable demands upon an attorney's time and attention emerge; but they are obligations nonetheless.  *See Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 341 (2d Cir. 1999).

If a busy attorney makes misleading representations to a court out of expedience and selfish disdain for the sound administration of justice, sanctions may be necessary to deter similar misconduct by that attorney and by similarly-situated attorneys.  Fed. R. Civ. P. 11(c)(4).  Courts must be able to rely upon candor from attorneys to keep dockets in good order for the sake of parties, other attorneys, the public, and the administration of justice.  *See* L. R. Civ. P. 83.3(a); N.Y. Rules of Prof'l Conduct R. 3.3(a)(1), (a)(2), and (c), and R. 8.4(c) and (d), 22 NYCRR Part

1200 (2012).  The press of an attorney's day-to-day responsibilities, even if a flood

of problems arises, does not negate the subjective bad faith of a misleading

representation made for an improper purpose.

Of course, attorneys encounter exigent circumstances, and sometimes even

emergencies, in the daily practice of law.  Such circumstances can mitigate

sanctions that might otherwise be necessary because of bad faith misconduct.  On

the other hand, an attorney's persistent false denial of bad faith may be an

aggravating circumstance, making it prudent to consider supplementary

discipline or other corrective action to prevent future misconduct by the attorney.[2]

To put things in perspective, Agola's misleading representations in this case,

even though made in bad faith to receive extensions of time under Fed. R. Civ. P.

6(b), are significantly less serious than some of Agola's other misconduct.  In

*Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121 (2d Cir. 2011), Agola was

sanctioned for alleging that a defendant made an unsolicited, libelous statement

about her client.  642 F.3d at 125.  In fact, Agola had requested and authorized

publication of the allegedly libelous statement herself.  *Id.*  Agola maintained her bad

faith allegations against the defendant for over a year after she was exposed.  *See*

*Johnson v. Univ. of Roch. Med. Ctr.*, 715 F. Supp. 2d 429-31 (W.D.N.Y. 2010) *and*

---

[2]  For example, Agola argues  "[t]here is no evidence [she] was manipulating the court system to
secure ends inimical to those for which it was created by securing the extension motions in
question."  Dkt. No. 105, p. 10.  In light of Agola's insistence that she sought the extensions of time
only because of the extraordinary conflicting demands of her practice, and because she was being
especially ethically conscious and sensitive to her client's needs, the argument amounts to a
contention that there is no evidence Agola's ends did not justify her means.  The argument suggests
Agola considers it acceptable to manipulate the court system in service of her own personal view of
substantial justice.

642 F.3d at 125.

In some circumstances, a misleading representation to receive an extension of time consented to by all parties might be overlooked by a court in an exercise of discretion.  *See Brown v. Kay*, No. 11 Civ. 7304 PAE, 2012 WL 573198 *2-4 (S.D.N.Y. Feb. 21, 2012).  The defendants in this case consented to the extensions of time Agola obtained from the Magistrate Judge.  But when attorney bad faith is involved, the  "focus is [generally] on the purpose rather than the effect of the sanctioned attorney's activities."  *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 145 (2d Cir. 2012).  And Agola's misconduct has to be viewed as a continuing failure to  "fully respect her professional obligations to her clients and the courts."  *In re Agola*, No. 10-90061-am, 2012 WL 2025389 *14 (2d Cir. June 6, 2012) (App 2).

In publically reprimanding Agola, the Second Circuit Court of Appeals adopted a recommendation calling upon  "Agola to transform her overall attitude toward her professional responsibilities."  *Id.* at *14.  The circumstances before the Court do not bode well for that transformation.  Agola's misconduct in this case, because she falsely denies it, has become even more serious because it makes it seem she is "unwilling to change . . .  despite ample opportunity"  to do so.  *Id.* at *8.

## PRIOR PROCEEDINGS

The plaintiff, Paul A. Rankin, alleges he suffered employment discrimination and related retaliation by the City of Niagara Falls, New York, and the individual head of the City's Department of Public Works, in violation of 42 U.S.C. § 1981 and New York State Human Right Law, N.Y. Exec L. § 290 *et seq.*  Dkt. No. 1.  Agola

filed the Complaint on behalf of plaintiff Rankin on November 10, 2009.  *Id.*

The action was referred to Magistrate Judge Jeremiah J. McCarthy for pretrial

proceedings.  Dkt. No. 6.  The Magistrate Judge repeatedly modified scheduling

orders to extend time for completion of discovery and for filing dispositive motions.

Dkt. Nos. 17, 19, 21, 23, 25, 27, 30, 33.  Pretrial discovery was completed during

July 2011.  *See* Dkt. No. 22.

Defendants filed a motion for summary judgment pursuant to Fed. R. Civ. P.

56 on November 4, 2011.  Dkt. Nos. 34-40.  Defendants' submissions in support of

their summary judgment motion totaled more than 250 pages.  *Id.*  Plaintiff Rankin's

response to defendants' motion was first due December 5, 2011.  Dkt. No. 41.

Agola filed three successive motions for extensions of time to file opposition

to defendants' summary judgment motion on the due dates of the opposition:

December 5, 2011, January 4, 2012, and February 23, 2012.  Dkt. Nos. 42, 45, 48.

Those pleadings are analyzed below and are not summarized here.  Defendants

consented to the extensions of time.  *Id.*  The Magistrate Judge granted the three

motions on the papers, without appearances.  Dkt. Nos. 43, 46, 49.

Agola filed no response to defendants' summary judgment motion on plaintiff

Rankin's behalf.  Instead, on March 30, 2012, Agola filed a Stipulation of

Discontinuance of the action, with prejudice.  Dkt. No. 51.  It was signed by counsel

for the parties on March 30, 2012.  *Id.*  The Stipulation was approved and entered

March 31, 2012.  Dkt. No. 52.

On April 5, 2012, plaintiff Rankin filed a *pro se* motion to vacate the

14

Stipulation of Discontinuance that had been filed by Agola.  Dkt. No. 53.  Plaintiff stated he had not authorized Agola to discontinue the case on his behalf.  Dkt. No. 54.  He stated that Agola filed the Stipulation without his consent and he asked that the action be re-opened for trial by jury.  *Id.*

Proceedings related to plaintiff Rankin's *pro se* motion to vacate the Stipulation of Discontinuance and to re-open the action were recommitted to Magistrate Judge McCarthy pursuant to 28 U.S.C. § 636(b)(1).  Dkt. No. 58.  Agola responded to plaintiff Rankin's *pro se* motion to vacate the Stipulation and to re-open the case by cross-moving to withdraw as plaintiff's attorney in light of the conflict concerning the Stipulation and because she wished to dispute plaintiff's contentions that he did not authorize her to enter into the Stipulation on his behalf.  Dkt. Nos. 56, 61.  Agola represented that plaintiff  "expressly"  authorized her to discontinue the action on March 23, 2012.  Dkt. No. 56-1, pp. 2-3, ¶¶ 8, 10, 12.

The Magistrate Judge found plaintiff Rankin had waived the attorney-client privilege by contesting Agola's authority to dispose of his case and granted Agola leave to discuss her dealings with plaintiff concerning the summary judgment motion and the Stipulation of Discontinuance.  Dkt. No. 72, p. 5; Dkt. No. 80, p.1.  In filings and during subsequent proceedings before the Magistrate Judge, including an evidentiary hearing, Agola sought to explain her conduct and thought-processes leading up to the filing of the disputed Stipulation.  *See e.g.,* Dkt. Nos. 75, 80, 84.

Agola said that she had recognized weaknesses in plaintiff Rankin's case from the start.  *See e.g.,* Dkt. No. 75, pp. 5-7, ¶¶ 22-29; Dkt. No. 80, pp. 12-14.  She

represented that she had explained major problems in plaintiff's case to him before

he retained her on a contingent-fee basis in 2009.  *Id.*; Dkt. No. 75, p. 20; Dkt. No.

77-1; *see* Dkt. No. 67, pp. 4-6.  She emphasized plaintiff's failure to bid on nine other

employment opportunities with defendant City of Niagara Falls and statements

plaintiff made regarding those opportunities and his capacity to work.[3]  *See e.g.,*

Dkt. No. 75, pp. 9-15, ¶¶ 38-53.

The Magistrate Judge became concerned that Agola had continued plaintiff

Rankin's action against defendants even though it seemed she had concluded at the

close of discovery in July of 2011 that the action could not survive a motion for

summary judgment.  *See* Dkt. Nos. 75, p. 7, ¶ 29; 81, pp. 3-4, 15-17.  When Agola

was pressed by the Magistrate Judge about continuing to pursue the case after

concluding it was without merit, Agola explained that the Magistrate Judge had

misunderstood the timing of her assessment of the case.  Dkt. No. 84, p. 6; Dkt. No.

90, pp. 2-4.  Agola asserted that she had reserved judgment on the viability of the

plaintiff's case until March of 2012, when she was finally able to free herself from her

other professional commitments and was able to work on the proof problems in the

---

[3]  Plaintiff Rankin's *pro se* Motion to Vacate the Stipulation of Discontinuance generally alleged Agola negligently failed to advise him of his duty to take steps to mitigate his alleged damages by responding to four opportunities to bid on other employment with the City of Niagara Falls that were extended to him after he retained Agola as his attorney.  See Dkt. No. 54, p. 2, ¶ 3; Dkt. No. 36 (bid correspondence for all nine positions); Dkt. No. 77-1 (March 23, 2009 Retainer Agreement).  Plaintiff alleged Agola's legal malpractice as a motive for her attempt to discontinue the action without his authorization.  Dkt. No. 54, p. 2, ¶ 3.  When plaintiff, acting *pro se*, attempted to question Agola about it during her testimony before the Magistrate Judge, Agola testified that plaintiff was representing himself  "through about ninety-five percent of those offers."  Dkt. No. 80, p. 14.  These circumstances are difficult to reconcile, *see* Dkt. No. 75, pp. 9-15, ¶¶ 38-53, but were not developed during the evidentiary hearing.

case.  *Id.*  She said that she had needed to review some depositions that were taken

by an associate before the close of discovery in July of 2011.  Dkt. No. 84, p. 6 n.4;

*see* Dkt. No. 22; Dkt. No. 90, p. 4, ¶ 11.  Agola also stressed that she needed

carefully to consider the mitigation and credibility problems in the case due to

plaintiff Rankin's failure to bid on any of nine job offers and because of the damaging

statements he had made.  Dkt. No. 84, pp. 6-18.  These statements contradicted her

representations to the Magistrate Judge in support of her motions for extension of

time.

On March 22, 2012, Agola received an e-mail from plaintiff with his views of

the pending summary judgment motion that reaffirmed his belief that his case is

strong.  *See* Dkt. Nos. 54, Ex. 2; 75, pp. 17, ¶¶ 56-62; 90, pp. 7-8, 12, ¶¶ 19, 21, 34;

80, p. 12.  Agola concluded that plaintiff was not about to recant statements he had

made that she viewed as false and damaging to the case and that the case was

unsustainable.  Dkt. No. 90, p. 12, ¶ 34; *see* Dkt. Nos. 54, Ex. 2; 75, p. 17, ¶¶ 56-62.

Agola determined she would have to withdraw as plaintiff's counsel if plaintiff would

not agree to discontinue the case.  Dkt. No. 90, p. 9-10, ¶¶  24-25; Dkt. No. 80, pp.

12-14.

Agola informed plaintiff Rankin that she had concluded she could not in good

faith oppose defendants' summary judgement motion during a telephone call March

23, 2012.  Dkt. No. 80, pp. 3-4, 12-14; Dkt. No. 90, pp. 7-8,  ¶¶ 19-21.  She advised

plaintiff he should discontinue the action, that she  "had to do the right thing," and

that the right thing for him would have been to have bid on the nine jobs he had

been offered by defendant City of Niagara Falls.  Dkt. No. 75, pp.18-19, ¶¶ 69-72;

Dkt. No. 80, p.13.  Agola asserted that plaintiff  "expressly agreed"  to discontinue

the action.  Dkt. No. 56-1, pp. 2-3, ¶¶ 7-8; Dkt. No. 75, p.19, ¶ 72.  Plaintiff denied he

had agreed to discontinue the action.  Dkt. Nos. 53-54; 80, pp. 4, 6.

The Magistrate Judge specifically questioned Agola about the representations

she had made when she sought extensions of time to respond to the summary

judgment motion.  *See e.g.*, Dkt. No. 90, pp. 5-7, ¶¶ 16-19 (quoting Agola's

testimony).  Agola responded that she had not intended to  "pledge"  to oppose the

motion.  *Id.* at ¶ 17.  Agola denied that she represented that she was substantively

opposing defendants' motion for summary judgment on behalf of plaintiff.  *Id.* at pp.

12-13, ¶ 35.  Agola said she had reserved judgment on the viability of the plaintiff's

case until March of 2012, when she was finally able to work on the case.  Dkt. No.

84, p. 6; Dkt. No. 90, pp. 2-4.

Agola also said that she did not owe the Court an explanation of proof

problems in the case.  *See* Dkt. No. 90, pp. 10-14, ¶¶ 28-39.  Agola insisted she was

acting out of concern for her client and because she was concerned she would be

sanctioned if she interposed baseless opposition to the defendants' motion.  Dkt.

No. 84, pp. 6-8, 24-25.

After completion of oral argument and the May 23, 2012 evidentiary hearing

on plaintiff Rankin's *pro se* motion to vacate the Stipulation of Discontinuance and to

re-open the case, and on Agola's cross-motion to withdraw as counsel, the

Magistrate Judge granted Agola's motion to withdraw as counsel, subject to a later

determination whether she should be sanctioned for misconduct. Dkt. No. 81. The Magistrate Judge also recommended that plaintiff's motion to vacate the Stipulation be granted. *Id.* The Magistrate Judge recommended a finding that Agola had not given plaintiff a genuine opportunity to oppose the motion for summary judgment. *Id.* at pp. 9-10. He allowed plaintiff additional time to respond to the motion for summary judgment. *Id.* at pp. 12-13. The Court adopted Magistrate Judge McCarthy's Report and Recommendation to vacate the Stipulation and re-open the action. Dkt. No. 87.

On July 12, 2012, Magistrate Judge McCarthy issued an Order to Show Cause notifying Agola specifically that he was considering sanctioning her pursuant to Fed. R. Civ. P. 11(c)(3) and 28 U.S.C. § 1927 for misconduct in plaintiff Rankin's case. Dkt. No. 89. Agola did not appear herself, but she had an associate in her law firm appear on her behalf before the Magistrate Judge. Dkt. No. 93.

The Magistrate Judge recommended in the September 6, 2012 Report and Recommendation that the Court find that Agola's repeated representations that she had substantive opposition to the summary judgment were false, made in subjective bad faith, and that she should be suspended from practice in the Western District of New York for six months pursuant to Fed. R. Civ. P. 11(c)(3). Dkt. No. 95. Agola objects pursuant to Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1) to the Report and Recommendation that she be sanctioned for bad faith. Dkt. No. 105. Separate counsel appeared to assert Agola's objections to the Magistrate Judge's Report and Recommendation. Dkt. Nos. 105-06; Minute Entry, December 11, 2012.

19

**DISCUSSION**

Due process and Fed. R. Civ. P. 11 require that "the subject of a sanctions

motion be informed of: (1) the source of authority for the sanctions being

considered; and (2) the specific conduct or omission for which the sanctions are

being considered so that the subject of the sanctions motion can prepare a

defense." *Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 334 (2d Cir.

1999) (quoted in *Star Mark Mgmt, Inc. v. Koon Chun Hing Kee Soy & Sauce,* 682

F.3d 170, 175 (2d Cir. 2012)). "Indeed, only conduct explicitly referred to in the

instrument providing notice is sanctionable." *Schlaifer Nance & Co.,*194 F.3d at 334

(citation omitted); *see Wilson v. Citigroup, N.A.*, 702 F.3d 720, 725 (2d Cir. 2012)

(quoting *Sakon v. Andreo,* 119 F.3d 109, 114 (2d Cir.1997)). Fed. R. Civ. P. 11

specifically provides that a Court "must not impose a monetary sanction . . . on its

own, unless it has issued [a] show cause-order under Rule 11(c)(3) . . . [requiring an

explanation] why conduct specifically described in the order has not violated Rule

11(b)." *Id.* at (c)(3) and (5).

On July 12, 2012, Magistrate Judge McCarthy issued an Order to Show

Cause notifying Agola that the Court was considering sanctioning her pursuant to

Fed. R. Civ. P. 11(c)(3) and 28 U.S.C. § 1927 for misconduct in plaintiff Rankin's

case. One of the grounds specified was:

> Stating to the court on three separate occasions ([42-1], [45-
> 1], and 48-1]) that "plaintiff's opposition to defendant's
> Motion for Summary Judgment is substantive", and that she
> had "in good faith . . . anticipated filing and serving the
> Plaintiff's Opposition to Defendant's Motion for Summary

Judgement", when she concluded that he could not "in good faith, on this record, raise a material issue of fact sufficient to defeat the Defendant's motion" ([75], ¶ 29).

Dkt. No. 89, ¶ 2.

Agola responded to the Order to Show Cause in a declaration made under penalty of perjury that her representations concerning substantive opposition to the summary judgment motion were not intended to "confuse or mislead" the Magistrate Judge. *See* Dkt. No. 90, ¶ 18; Dkt. No. 105, p. 9. Agola explained that she been "very tied up" with other matters, and that her representations about substantive opposition to the motion for summary judgment were "not intended as a 'pledge' that there was a basis for opposition [to the motion], but, rather [] that sufficient time was needed to review the substantive issues." Dkt. No. 90, ¶¶ 16-18.[4]

Agola bolstered her argument that she did not intend to make a misleading representation by conceding that she had no basis for representing that she had substantive opposition to the motion for summary judgment:

> since the circumstances which necessitated the three (3) extension requests in the first instance had made a thorough review of [defendants'] motion and the related motion record impossible up to that point, [Agola] would have had no basis to make such a representation to the Court.

Dkt. No. 90, ¶ 18. She admitted she had no basis in fact for representing that she

---

[4] Agola does not object to the notice of the sanctionable conduct. The Court finds no clear error in the notice of Agola's sanctionable representations that she had anticipated filing timely substantive opposition to the summary judgment motion in the Order to Show Cause. *See In re Peters*, 642 F.3d 381, 390-92 (2d Cir. 2011).

was, in good faith, close to filing substantive opposition to the motion for summary judgment when she sought the extensions of time.  *Id.*; *see also* Dkt. No. 105, p. 10.

Agola's response to the Order to Show Cause also emphasized that she believed she had ethically-proper motives for seeking extensions of time.  In general, she argued that seeking the adjournments  "demonstrat[ed] true concern for her clients [] consistent with the findings of the Second Circuit determination."  Dkt. No. 90, ¶ 39; *see also id.* at ¶ 38; Dkt. No. 83, p. 7.  Agola complained that she believed she had behaved scrupulously and that  "to infer otherwise [was] to directly impugn [her] reputation . . . for following the contours of Rule 11 as admonished by this Court."  Dkt. No. 90, ¶ 39*.*

Agola also insisted that she could not be found to have materially misled the Magistrate Judge because she had no duty under New York Disciplinary Rule 1-102(A)(4) to disclose ethical concerns she entertained about plaintiff Rankin's inconsistent statements in her motions for extensions of time.  Dkt. No. 90, ¶¶ 17-18; ¶ 38.[5]  In summary, Agola explained that her representations had been made in order to  "seek[] time to review the motion for summary judgment, discuss with [plaintiff] Rankin his prior inconsistent statements, attempt to persuade [plaintiff] to withdraw the action based on his prior inconsistent statements, and then failing that,

---

[5]  Agola disregarded that the Disciplinary Rules of the New York Lawyer's Code of Professional Responsibility were rescinded and replaced by the New York Rules of Professional Conduct on April 1, 2009.  *See,* 22 N.Y.C.R.R. Part 1200; *In re Agola,* No. 10-90061-am, 2012 WL 2025389 at *10 (2d Cir. June 6, 2012).  N.Y. Rules of Prof'l Conduct R. 3.3 did away with a limitation in D.R. 1-102 upon an attorney's duty to prevent a client's false testimony in civil cases.  *See* NYSBA Comm. On Prof'l Ethics, Op. 837, 2010 WL 2977924 (Mar. 16, 2010).

to withdraw as his counsel." Dkt. 90, ¶ 37.

Fed. R. Civ. P. 11(c)(3) authorizes a court to sanction an attorney on its own initiative if the court determines that the attorney violated Fed. R. Civ. P. 11(b) by making "false, misleading, improper, or frivolous representations to the court." *Williamson v. Recovery Ltd. P'ship,* 542 F.3d 43, 51 (2d Cir. 2008); *S.E.C. v. Lynn A. Smith, et al.,* Dkt. No. 11–3843–cv(L), 2013 WL 1092819, *7 (2d Cir. Mar. 18, 2013) (citing *In re Pennie & Edmonds LLP,* 323 F.3d 86, 90 (2d Cir.2003)). Fed. R. Civ. P. 11(b), states, in pertinent part:

> Representations to the Court. By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; . . .

*Id.* However, whether sanctions may be imposed under Fed. R. Civ. P. 11(c)(3) on a court's own initiative is not governed by the objective-reasonableness standard applicable under Fed. R. Civ. P. 11(b) when sanctions are sought by another party for representations in a pleading or other paper. Instead, in the Second Circuit, a district court can impose Fed. R. Civ. P. 11(c)(3) sanctions on its own initiative only upon a finding of subjective bad faith, which is the same *mens rea* applicable to a finding of contempt. *Compare ATSI Commc'ns, Inc. v. Sharr Fund, Ltd.*, 579 F.3d 143, 150-51 (2d Cir. 2009) (quoting and discussing *In re Pennie & Edmonds LLP,*

323 F.3d 86  (2d Cir. 2003)), *with Star Mark Mgmt, Inc., v. Koon Chun Hing Kee Soy & Sauce*, 682 F.3d 170, 178-79 (2d Cir. 2012) (employing the objective standard of Fed. R. Civ. P. 11(b)).

The higher *mens rea* standard of subjective bad faith applicable to Fed. R. Civ. P. 11(c)(3) sanctions on a court's own initiative has been adopted to reduce the risk that a district court will sanction an attorney and inadvertently dampen attorneys' legitimate, zealous advocacy on behalf of clients.  *In re Pennie & Edmonds LLP,* 323 at 90-93; *see also Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166 (2d Cir.1999).  When a district court considers sanctioning an attorney on its own under Fed. R. Civ. P. 11(c)(3), it is usually past the time when an attorney can take steps to correct or withdraw a questioned pleading or other paper and the attorney will not ordinarily have had an opportunity to reconsider and change the questioned pleading or other paper.  *ATSI Comm'cns, Inc.,* 579 F.3d at 150-51.  To avoid the possible distortions of hindsight, a district court considering sanctions on its own initiative must evaluate the attorney's conduct and mental state with special care and restraint.  *See Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d at 334.

The higher *mens rea* standard of subjective bad faith applicable to Fed. R. Civ. P. 11(c)(3) sanctions can be satisfied by a misleading representation to a district court for an improper purpose.  *S.E.C. v. Lynn A. Smith, et al.,* Dkt. No. 11–3843–cv(L), 2013 WL 1092819, *7 (2d Cir. Mar. 18, 2013).  A court's factual findings must be specific, and the Court finds that the factual determinations under Fed. R. Civ. P. 11(c)(3) must meet the high evidentiary burden of clear and

convincing evidence applicable to findings of contempt, *Paramedicas*

*Electromedicina Comercial, Ltda. v. GE  Med. Sys. Infor. Techs., Inc.*, 369 F.3d 645,

655 (2d Cir. 2004), and applicable to findings of an attorney's subjective bad faith

made under either 28 U.S.C. § 1927 or the Court's inherent power, *see Oliveri v.*

*Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).

Magistrate Judge McCarthy was unpersuaded by Agola's responses to the

Order to Show Cause and found that Agola made repeated and blatant

misrepresentations.  Dkt. No. 95, pp. 11-13.  The Magistrate Judge specifically

found:  "Since []Agola did not know whether plaintiff had a substantive basis for

opposing the [summary judgment] motion, she defrauded the court by swearing that

he did."  Dkt. No. 95, p. 11.  He found  "Agola's suggestion that she 'did not mislead

the Court in any material fashion' is simply wrong."  *Id.* (*citation omitted*).  The

Magistrate Judge was misled that Agola in good faith believed she had substantive

opposition to the motion for summary judgment.  Dkt. No. 95, pp. 9-13.

Agola objects to the findings of the Magistrate Judge by insisting that she did

not mislead the Magistrate Judge.  She argues the Magistrate Judge was too literal-

minded and that her declarations  "used the phrase 'substantive' to describe the

Plaintiff's potential opposition to the summary judgment [motion]."  Dkt. No 105, pp.

8, 10; *see* Dkt. No. 90, ¶ 17 (same argument made before the Magistrate Judge

quoting Agola's testimony during the evidentiary hearing on the disputed Stipulation

of Discontinuance).  Agola also maintains her representations were justified by

subjective good faith because she was motivated by her  "worr[ies] about the

interests of her client, rather than desir[e] to mislead the Court." Dkt. No. 105, p. 9.

Upon review of a magistrate judge's report and recommendation, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a timely and specific objection to a report and recommendation is made, the Court reviews the portion of the report and recommendation to which the party objects under a *de novo* standard of review. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). The Court may adopt those portions of the recommended ruling to which no timely objections are made, provided no clear error is apparent. *Id.*

Careful review of Agola's representations in support of her motions for extensions of time shows Agola's objections to the Report and Recommendation are primarily false denials that her representations were misleading and attempts to justify those representations. On December 5, 2011, Agola made the first of her three successive motions to adjourn plaintiff Rankin's response to the pending motion for summary judgment. She represented to the Magistrate Judge under penalty of perjury that she did not have enough time to satisfy certain other professional obligations and to "file Plaintiff's Opposition to Defendant's Motion for Summary Judgment, as per Fed. R. Civ. P. 56." Dkt. No. 42-1, p.1, ¶ 2 (capitalization in original); *see id.* pp. 1-2, ¶¶ 4-6. Agola represented that:

> In good faith, your Declarant anticipated filing and serving the Plaintiff's Opposition to Defendant's Motion for Summary Judgment on Monday December 5, 2011, . . . but due to extraordinary circumstances, your Declarant requests a brief extension of time [to January 4, 2012].

26

*Id.* at p. 2, ¶ 7.  Agola represented that she believed  "[i]n good faith"  she would

have filed and served Plaintiff's Opposition on December 5, 2011, but for her

extraordinary practice conflicts.  *Id.*

Agola closed by representing:

> 9.   The Plaintiff's Opposition to Defendant's Motion for
> Summary Judgment is substantive and your Declarant fears
> the Plaintiff's rights would be severely prejudiced, given the
> circumstances of preparing for trials and perfecting
> responses to several Motions for Summary Judgment.

> 10.   Based on the good cause contained herein, your
> Declarant respectfully requests a brief adjournment of 30
> days, to January 4, 2012 to file and serve the Plaintiff's
> Opposition to Defendant[s'] Motion for Summary Judgement.

Dkt. No. 42-1, p. 2.  Agola asked for an extension of time in order to have enough

time to interpose  "substantive"  opposition to summary judgment   "as per Fed. R.

Civ. P. 56"  to protect plaintiff Rankin's case from severe prejudice.  *See id.* at p.1, ¶

2.

Agola vouched for her December 5, 2011 representations by asserting her

"good faith."  Dkt. No. 42-1, p. 2, ¶ 7.  By asserting her good faith, Agola conveyed

her representations were earnest.  Now, after having sworn that she anticipated

filing and serving substantive opposition to the motion on its December 5, 2012 due

date, and asking the Magistrate Judge for time to do just that, Agola insists she only

represented that she needed more time to preserve potential opposition.

Agola's December 5, 2011 representations are far too clear for that

equivocation.  For the Court to accept the argument that Agola did not mean to

27

represent that she believed she had substantive opposition to the summary

judgment motion, the Court would have to conclude that Agola lacked the capacity

to recognize what her words under penalty of perjury meant.  Agola is not so

uncomprehending.  She certainly knew the difference between  "substantive"

opposition to a summary judgment motion and  "potential"  opposition to the motion.

In plain English, she represented to the Magistrate Judge that she believed she had

substantive opposition to the summary judgment motion.

Agola does not claim she made her misleading representations in error.

During her testimony on the disputed Stipulation of Discontinuance, she was asked

by the Magistrate Judge whether she had mistakenly used standardized, form

language in her pleadings.  *See* Dkt. No. 90, pp. 5-7, ¶¶ 16-18.  Agola has been

criticized by Judges for doing so in the past.  *See In re Agola*, No. 10-90061-am,

2012 WL 2025389, *7  (2d Cir. June 6, 2012); *Muhammad v. Wal-Mart Stores E.,*

*L.P.*, No. 10-CV-6074-CJS, 2012 WL 5950368 * 7 n.12 (W.D.N.Y. Nov. 28, 2012).

Agola admitted using standard language in support of her motions for extensions of

time, and yet insisted that she was representing only that she needed time to decide

what to do in response to the motion for summary judgment.  Dkt. No. 90, pp. 5-8,

¶¶ 16-20 (quoting Agola's testimony at ¶ 17); Dkt. No. 105, pp. 7-9.

On each of January 4, 2012 and February 23, 2012, Agola again moved to

adjourn plaintiff Rankin's response to the defendants' pending motion for summary

judgment and represented under penalty of perjury that she did not have enough

time to satisfy other specific, unrelated professional obligations and to  "file Plaintiff's

opposition to defendant's Motion for Summary Judgment, as per Fed. R. Civ. P. 56 for good cause." Dkt. No. 45-1, p.1, ¶ 2; *see id.* pp. 1-2, ¶¶ 8-11; Dkt. No. 48-1, p.1, ¶ 2; *see id.* pp. 2-3, ¶¶ 15-18. She asked for time to file, not for time to do the work to decide whether she could file.

On January 4, 2012, Agola's declaration stated, in part:

> 2. I make this declaration in support of the request for an enlargement of time [to] file and serve Plaintiff's opposition to defendant's Motion for Summary Judgment as per Fed. R. Civ. P. Rule 56 for good cause.
>
> 3. On December 6, 2011, the Court granted Plaintiff's Motion for an Extension of time to file his response in opposition to defendant's Motion for Summary Judgment to on or before January 4, 2012. (Dkt. # 43).
>
> . . .
>
> 8. In good faith, your Declarant anticipated filing and serving the Plaintiff's opposition to defendant's Motion for Summary Judgment on January 4, 2012, as previously requested in Plaintiff's Motion for an Extension of Time, filed December 5,2011, but due to the extraordinary circumstances, your Declarant requests an additional extension of time.
>
> . . .
>
> 10. The Plaintiff's opposition to defendant's Motion for Summary Judgment is substantive and your Declarant fears the Plaintiff's rights would be severely prejudiced, given the circumstances of declarant's petitions and appeals calendar, along with preparing for an upcoming trial.

Dkt. No. 45-1, pp. 1-2. Her February 23, 2012 declaration used essentially the same language, updated to reflect the two extensions previously granted by the Magistrate Judge and to describe new extraordinary circumstances. Dkt. No. 48-1.

The Court specifically finds that Agola represented to the Magistrate Judge on December 5, 2011, January 4, 2012 and February 23, 2012, that she in good faith believed she had substantive opposition to the pending summary judgment motion that she needed to file to protect plaintiff from severe prejudice.  Agola's assertions that she did not intend to make such representations, and that her representations only conveyed that she needed more time to review substantive issues to preserve potential opposition to the summary judgment, are attempts to justify or excuse her subjective bad faith.

At the time of Agola's December 5, 2011 representations to the Magistrate Judge, she had not reviewed defendants' November 4, 2011 submissions of more than 250 pages in support of their motion for summary judgment.  Dkt. No. 90, p. 4, ¶¶ 11-12.  Pretrial discovery in the case closed in July of 2011, and Agola asserts that her long-standing concerns about the sufficiency of the evidence to support plaintiff Rankin's claims also remained unresolved because she had not reviewed two depositions an associate took near the close of discovery.  Dkt. No. 90, pp.  2-4, ¶¶ 5 -12; Dkt. No. 84, p. 6 n.4; *see* Dkt. No. 84, pp. 10-18.

Moreover, Agola had not spoken to plaintiff Rankin about the sufficiency of the evidence to oppose the motion, or about his conflicting statements that she believed were damaging to his claims.  Dkt. No. 75, p. 17, ¶¶ 56-62; Dkt. No. 90, p. 7, ¶ 18.  Even if the Court were to assume, for the sake of argument, that Agola had planned to take the time to confer with plaintiff about his conflicting statements before December 5, 2011, Agola did not know whether there was a legally-sufficient

basis to oppose the motion for summary judgment when she swore that she believed there was on December 5, 2011.  The same was true when she misled the Magistrate Judge with her January 4, 2012 and February 23, 2012 representations in support of her motions for further extensions of time.  And Agola admits there was no basis in fact for the representation that she had substantive opposition to the motion for summary judgment when she requested extensions of time.  Dkt. No. 105, p. 10; *see* Dkt. No. 90, ¶ 18.  Agola's denials that she meant to represent to the Magistrate Judge that she believed she had substantive opposition to the summary judgment motion are not credible.

Agola concluded her December 5, 2011 declaration by referring to the "good cause contained" in the declaration, conveying that her representations provided sufficient reason for the Magistrate Judge to grant the extension of time she was seeking.  Dkt. No. 42-1, p. 2, ¶ 10.  Fed. R. Civ. P. 6(b) generally governs the extension of time periods set by the Federal Rules of Civil Procedure or by order of a district court, and it governed here.  Her January 4, 2012 declaration and February 23, 2012 declaration each also concluded by referring to "good cause" for the extensions.  Dkt. No. 45-1, p. 2, ¶ 11; Dkt. No. 48-1, p. 4, ¶ 18.

Pursuant to Fed. R. Civ. P. 6(b)(1), a court may extend motion-response time for good cause with or without a motion.  Fed. R. Civ. P. 6(b)(1)(A).  The rule gives broad discretion to a court to extend a time limit either before or after it has expired. *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir.1988)  ("The granting or denial of a motion to extend the time . . . lies within the discretion of the district court").  "Good

31

cause" is usually not difficult to show, and:

> an application for the enlargement of time under Rule 6(b)(1) normally will be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party.

4B C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure* § 1165 (3d ed. 2012) (discussed in *Wesolek*, 838 F.2d at 58). The Fed. R. Civ. P. 6(b) "good cause" requirement places responsibility for control of the court's docket "to secure the just, speedy, and inexpensive determination of every action and proceeding" within the sound discretion of the district court. *Id.*; Fed. R. Civ. P. 1.

Agola's claims of "good cause" for the extensions of time she requested were based, in part, on her misleading representations that she believed, in good faith, that she had substantive opposition to the motion for summary judgment. Agola presented her scheduling conflicts to the court as if they emerged despite reasonably diligent work on plaintiff Rankin's case. Agola knew her representations were misleading each time she made them because she had been too busy "to substantively review" the "motion and related record," and she had been too busy to substantively review certain deposition transcripts she viewed as critical or defendants' summary judgment motion. Dkt. No. 90, p. 4, ¶ 11; Dkt. No. 84, p. 6 n.4. She did not do so until sometime in March of 2012. Dkt. No. 90, p. 4, ¶ 11.

Similarly, Agola admits she sought the extensions of time because she was too busy to resolve doubts as to whether there was legally-sufficient evidence to oppose the defendants' summary judgment motion, and that she was afraid she

would be sanctioned again if she filed spurious opposition to the motion.  Dkt. No. 105, pp. 21-22; see Dkt. No. 84, pp. 10-18; Dkt. No. 90, ¶¶ 16-20, 35-39.  With these concerns in mind, Agola certainly knew that her representations that she had substantive opposition to the motion for summary judgment in support of the motions for extensions of time were misleading at the times she made them.  She did not know whether substantive opposition to the summary judgment motion existed.  And she certainly knew she had not been as diligent as she was conveying when making representations  "in good faith"  in support of her motions for scheduling relief under Fed. R. Civ. P. 6(b).

The Court understands Agola was very busy.  She is an experienced attorney with a history of practice-management problems because of accepting too many clients.  The Court is firmly convinced that, with Agola's experience, she well understood that her representations of  "substantive"  opposition were much more likely to establish good cause pursuant to Rule 6(b) for an extension of time than honest representations of being too busy to decide whether to oppose the motion. Agola could not risk opening the door to inquiries about her diligence that would require her to admit that she had not substantively reviewed the motion papers, that she had serious doubts she would ever file opposition to the motion, and that she was afraid she would be sanctioned if she did file opposition.  In fact, the only reason for Agola to make these misleading representations to the Magistrate Judge was to interfere with the Magistrate Judge's sound exercise of his scheduling discretion regarding the motions for extensions of time.  The absence of a colorable

basis for Agola's misleading representations requires the conclusion that she made them in bad faith. *See Schlaifer Nance & Co., Inc.*, at 338 (bad faith may inferred from such actions) (citing *People of the State of New York v. Operation Rescue Nat'l*, 80 F.3d 64, 72 (2d Cir. 1996)).

The Second Circuit Court of Appeals referred Agola to its Committee on Admissions and Grievances on July 8, 2010 for investigation because of her lack of diligence handling many matters in the Court of Appeals. *In re Agola*, No. 10-90061-am, 2012 WL 2025389 *2-5 (2d Cir. June 6, 2012) (App. 1). During an evidentiary hearing on January 27, 2011, Agola initially did not respond well to inquiries about "serial criticism from the courts before which she regularly practices," but, seemingly to her credit, she "ultimately professed to accept the criticism and viewed it, together with the [earlier Court of Appeals'] Referral Order as a 'wake-up' call." *In re Agola*, 2012 WL 2025389 at *12 (App. 2). The hearing was approximately a full year before Agola's misconduct in this case. Agola represented during the evidentiary hearing that she had taken five writing classes, and that she had made significant improvements in her practice. *Id.* In context, Agola's misleading representations in this case that she had substantive opposition to the summary judgment motion "per Rule 56" were not grossly inept or merely inartful representations; they were misleading representations.

The recommendations of the Second Circuit Committee on Admissions and Grievances were provided to Agola in December 2011, near the start of Agola's misconduct in this case. *In re Agola*, 2012 WL 2025389 at *1. The

recommendations included the reporting requirements to the Court of Appeals of any late filings, and of any criticism of Agola's representation of her clients in a court or administrative tribunal within the jurisdiction of the Court of Appeals.  *Id.* at *1, 15. The recommended discipline from the Court of Appeals was pending at the same time Agola represented to the Magistrate Judge in this case that she believed she had substantive opposition to the defendants' summary judgment motion when she knew she did not and when she knew that she was misleading the Magistrate Judge as to her diligence.  By misleading the Magistrate Judge in this case, Agola hid her practice-management problems while the November 28, 2011 Report and Recommendation of the Second Circuit Committee on Admissions and Grievances was pending before the Court of Appeals.[6]

Agola insists nevertheless that her conduct was justified by legitimate purposes.  She argues that she had an "objectively reasonable" basis for seeking extensions of time from the Magistrate Judge and that her conduct was "in keeping with" and "guided" by her desire to abide by professional standards.  Dkt. No. 105, p.6.  She even suggests that she is facing sanctions "[b]ecause she was carefully following the Second Circuit's admonition . . . [to be] careful to take the time necessary to carefully evaluate this case."  Dkt. No. 105, p. 21; *see* Dkt. No. 90, ¶ 39.

Whether Agola had an "objective basis" to seek any Fed. R. Civ. P. 6(b)

---

[6]  The Court does not consider whether Agola intended her misleading representations to the Magistrate Judge to hide her continuing practice-management problems from the Court of Appeals.

scheduling relief from the Magistrate Judge does not justify making misleading representations in subjective bad faith for an improper purpose.  Fed. R. Civ. P. 11(c)(3); *see S.E.C. v. Lynn A. Smith, et al.*, Dkt. No. 11–3843–cv(L), 2013 WL 1092819, *7 (2d Cir. Mar. 18, 2013).  Since Agola was flooded with work in her other cases, she certainly had an "objective basis" to request more time to work on the summary judgment motion in plaintiff Rankin's case pursuant to the Fed. R. Civ. P. 6(b) good cause standard.  But being busy, and needing time to address proof problems, did not give Agola a special right or privilege to make misleading representations to the Magistrate Judge that she had a good faith belief that she had substantive opposition to the summary judgment motion as a ploy to increase the chances the Magistrate Judge would find good cause for an extension under Fed. R. Civ. P. 6(b).

As mentioned above, determining whether to impose sanctions upon an attorney is "one of the most difficult and unenviable tasks for a court." *Schlaifer Nance & Co., Inc.*, 194 F.3d at 341.  The Court has not reviewed all prior instances when Agola has been sanctioned under Fed. R. Civ. P. 11, or received other sanctions, warnings or admonitions from judges or magistrate judges, for failing to live up to professional standards or for bad faith conduct.  The Court has, however, considered factors that might mitigate Agola's bad faith and the sanctions available under Fed. R. Civ. P. 11(c)(3), including all of the mitigating factors Agola presented to the Court, and specifically her request that the Court impose no sanction and defer to the on-going monitoring of her professional conduct by the Second Circuit

Court of Appeals.

The Court is unwilling to defer to the Second Circuit Court of Appeals'
monitoring of Agola's professional conduct without imposing sanctions.  The Court is
too concerned for Agola's clients, other litigants, attorneys, and the administration of
justice in the Western District of New York to defer to the Court of Appeals.

Agola claims to have been  "humbled"  by the Second Circuit Court of
Appeals' Public Reprimand and to have taken the reprimand as yet another  "wake-
up call."  Dkt. No. 105, pp. 15, 17.  But Agola's equivocations and excuses for her
bad faith representations in this case — including her suggestion that she faces
sanctions merely for asking for the extensions of time she needed  "[b]ecause she
was carefully following the Court of Appeals' admonition . . . [to be] careful to take
the time necessary to carefully evaluate this case,"  Dkt. No. 105, p. 21; *see* Dkt. No.
90, ¶ 39 — demonstrate Agola does not yet have  "respect [for] her professional
obligations to her clients and the courts."  *In re Agola*, 2012 WL 2025389 *14 (2d Cir.
June 6, 2012).

For example, during these proceedings, Agola attempted to ridicule an
objectively reasonable question posed by the Magistrate Judge concerning her
diligence.  Dkt. No. 84, p. 6 n.4.  Given Agola's precarious professional status due
partly to her lack of diligence, her attempt at ridicule is perhaps more telling than any
of her objections to the Report and Recommendation.  The prospects for  "Agola to
transform her overall attitude toward her professional responsibilities,"  *In re Agola*,
2012 WL 2025389 *14, are simply too dim for the Court to defer to the Court of

Appeals' monitoring of Agola's professional conduct.

Under all the facts and circumstances, the Court finds it must impose monetary sanctions upon Agola pursuant to Fed. R. Civ. P. 11(c)(3) of $500 for misleading the Magistrate Judge in bad faith on December 5, 2011, another $1,000 for misleading the Magistrate Judge in bad faith on January 4, 2012, and another $1,500 for misleading the Magistrate Judge in bad faith on February 23, 2012. Interfering with the Magistrate Judge's sound exercise of his scheduling discretion under Fed. R. Civ. P. 6(b) by misleading him in order to receive an extension of time was sufficiently serious when Agola did it in December of 2011 to warrant the $500 sanction. It was worse when she misled the Magistrate Judge again in January of 2012, and yet again in February of 2012, because the passing months exacerbated her earlier deceptions of the Magistrate Judge. These monetary sanctions serve an essential purpose of Fed. R. Civ. P. 11(c)(3) by deterring Agola and any similarly-situated attorney who might engage in similar misconduct.

The Court specifically considered whether Agola's heavy caseload should mitigate the sanctions to be imposed. The press of other matters on Agola's calendar does not negate the subjective bad faith of her misconduct. Because her long-standing practice-management problems have made it impossible, on prior occasions, for Agola to meet deadlines, and Agola has not seen fit to remedy the "business model she has chosen for her law practice' . . . 'despite ample opportunity" to do so, *In re Agola,* 2012 WL 2025389 at *8, the Court finds Agola's heavy caseload should not mitigate the sanctions to be imposed.

Based upon Agola's past responses to criticisms, warnings, and monetary sanctions, and her responses during these sanctions proceedings, it seems unlikely she would be adequately deterred from future misconduct by the $3,000 monetary sanctions alone.  *See e.g., id.* at *5-16.  Fed. R. Civ. P. 11(c)(4) states that sanctions "may include nonmonetary directives."  *Id.*  The Advisory Committee's notes explain that the "court has available a variety of possible sanctions to impose for violations," including  "issuing an admonition, reprimand, or censure"  as well as  "referring the matter to disciplinary authorities."  Fed. R. Civ. P. 11(b) and (c) (advisory committee notes to 1993 Amendments).  Agola's persistent denials that she misled the Magistrate Judge in this case, and her bluff equivocation that she was only preserving  "potential"  opposition to the motion for summary judgment, when viewed in the light of what Agola plainly represented in sworn declarations, also make it prudent to consider whether Agola is unwilling to change her overall attitude toward her professional responsibilities.

The Court therefore also reprimands Agola for making repeated misleading representations to the Magistrate Judge in bad faith for the improper purpose of interfering with the Magistrate Judge's scheduling discretion under Fed. R. Civ. P. 6(b).  This reprimand, imposed pursuant to the Court's authority in Fed. R. Civ. P. 11(c)(3) and (c)(4), is imposed to further deter Agola and any other attorney who might be tempted to make similarly misleading representations to a court to obtain an extension of time under Fed. R. Civ. P. 6(b).

The Court does not reprimand Agola lightly.  Her reputation has already

suffered from the serious disgrace of the Second Circuit Court of Appeals' Public
Reprimand and because of her recurring problems  "fully respect[ing] her
professional obligations to her clients and the courts."  *In re Agola*, No. 10-
90061-am, 2012 WL 2025389 *14 (2d Cir. June 6, 2012) (App. 2).  The reciprocal
censure of Agola by the attorney disciplinary committee of the New York State
Appellate Division, Fourth Department, is another disgrace and embarrassment.
*Matter of Agola*, 99 A.D.3d. 251 (4th Dept.  2012).  Nevertheless, after careful
consideration, the Court concludes this reprimand is necessary to further an
essential purpose of Fed. R.Civ. P. 11(c)(3)  by deterring similar bad faith conduct
by Agola and others.  Agola intentionally misled the Magistrate Judge in declarations
she made under penalty of perjury and in violation of her ethical obligation of candor
to courts.  *See* N.Y. Rules of Prof'l Conduct R. 3.3 (2012); 22 N.Y.C.R.R. Part 1200
(2012); L. R. Civ. P. 83.3(a).

The Court might not have decided to reprimand Agola, and might only have
included another harshly-worded warning or an admonition along with some
monetary sanctions, if Agola had expressed genuine remorse, and if she had
corrected her misleading representations.  *See* N.Y. Rules of Prof'l Conduct R.
3.3(a)(1) (2012); 22 N.Y.C.R.R. Part 1200 (2012).  If Agola had expressed genuine
remorse and had timely corrected her misleading representations, there would be far
less reason for serious concern she will engage in more similar professional
misconduct in the future which will harm litigants, other courts, members of the bar,
and the administration of justice.

For an attorney with the precarious professional status of Agola, a reprimand upon clear and convincing evidence that she intentionally misled a court as a ploy to obtain an extension of time is a grave sanction.  The reprimand triggers Agola's obligations to report her misconduct to other professional disciplinary authorities, *see e.g., In re Agola,* 2012 WL 2025389, *2, and may result in more severe discipline or other corrective action.  Agola will have to explain her misconduct in this case to other authorities.  *Id.*  Her misconduct will be considered by other authorities in light of her past representations that she had changed her ways and in light of her commitments to conform her conduct to professional standards.  Agola will have to explain why she has broken these commitments and why she should be given even more time to transform her overall attitude toward her professional responsibilities. The Court has carefully weighed the possibility that Agola may be suspended or face more serious discipline or corrective action by other authorities as a consequence of the reprimand in this case.

Although I do not adopt the recommendation of the Magistrate Judge to suspend Agola from practice in the Western District of New York, I refer Agola to all the Judges of the District for consideration of supplementary professional discipline or other corrective action consistent with the Court's inherent power.  Agola is counsel of record in numerous pending actions in this District and has actions pending before all active Judges and most, if not all, of the Senior Judges.  The actions that the Judges of the Western District of New York may take to stop Agola's unprofessional and bad faith conduct may be even more drastic than the six-month

suspension from practice recommended by the Magistrate Judge. I conclude such a potentially severe action pursuant to the Court's inherent power or other authority will more fittingly come, if necessary, after proceedings and due consideration by all the Judges of the District.

The sanctions the Court imposes are to deter the specific misleading representations referred to in paragraph 2 of the July 12, 2012 Order to Show Cause notifying Agola that the Court was considering sanctioning her pursuant to Fed. R. Civ. P. 11(c)(3) and 28 U.S.C. § 1927. Dkt. No. 89, ¶ 2. No other representations by Agola are being sanctioned. While Agola's misconduct only came to light because of the attorney-client dispute over the Stipulation of Discontinuance, none of the Court's sanctions have been imposed due to the finding that Agola failed validly to obtain plaintiff Rankin's consent and authorization to discontinue the action or by any other misconduct in this case. *See* N.Y. Rules of Prof'l Conduct R. 1.16 (2012); 22 N.Y.C.R.R. Part 1200 (2012). After due consideration, the Court specifically finds the sanctions being imposed are "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

## CONCLUSION

For all of the reasons stated above, pursuant to the Court's authority in Rule 11 of the Federal Rules of Civil Procedure to impose sanctions *sua sponte* to deter Christina A. Agola and other attorneys from making misleading representations to courts in subjective bad faith for an improper purpose, the Court imposes monetary

sanctions of $3,000, reprimands Agola, and refers Agola to the Judges of the United

States District Court for the Western District of New York for consideration of

supplementary discipline or other corrective action. The Court adopts the September

6, 2012 Report and Recommendation, in part, as specified in this Decision and

Order, and it is therefore

**ORDERED** that Christina A. Agola shall pay the total sum of $3,000 to the

Clerk of the Court by certified check within 21 days of entry of this Decision and

Order as a monetary sanction for her misleading representations for an improper

purpose in subjective bad faith.  The total monetary sanctions are comprised of $500

for Christina A. Agola's December 5, 2011 misleading representations, $1,000 for

her January 4, 2012 misleading representations, and $1,500 for her February 23,

2012 misleading representations; and it is further

**ORDERED** that Christina A. Agola is **REPRIMANDED** for repeatedly making

misleading representations for an improper purpose in subjective bad faith; and it is

further

**ORDERED,** in light of deficiencies in Christina A. Agola's conduct as an

attorney and member of the bar of the United States District Court for the Western

District of New York, Christina A. Agola is referred to the District Judges of the

Western District of New York for consideration of supplementary professional

discipline or for other corrective action.  The District Judges of this Court will decide

the scope of any investigation and any further proceedings to determine whether

Christina A. Agola is able to conform her conduct to professional standards and

43

whether her ability to practice in this Court should be suspended or barred, or some other sanction or warning imposed, to protect the public, other attorneys and litigants, the Court, and the administration of justice.

The Clerk of the Court is requested to provide copies of this Decision and Order to all District Judges of the Western District of New York in both active and senior service. I express no opinion at this time on the appropriate disposition of any proceedings that may occur regarding the imposition of supplementary discipline or other corrective action.

The Clerk of the Court is also requested to provide copies of this Decision and Order to the Committee on Admissions and Grievances of the United States Court of Appeals for the Second Circuit, and to the attorney disciplinary committee New York State Appellate Division, Fourth Department.

SO ORDERED.

s/ Richard J. Arcara
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: April 11, 2013